**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**November 8, 2006**

**Elisabeth A. Shumaker**
**Clerk of Court**

PUBLISH

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

STEVEN JONES, also known as
Smooth,

Defendant-Appellant.

No. 06-8003

---

**APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. NO. 05-CR-00078-J)**

---

Clifford J. Barnard, Boulder, Colorado, for Appellant.

James C. Anderson (Matthew H. Mead with him on the briefs), Cheyenne,
Wyoming, for Appellee.

---

Before **HARTZ**, **McCONNELL**, and **McWILLIAMS**, Circuit Judges.

---

**McCONNELL**, Circuit Judge.

---

Steven Jones was convicted for his part in a conspiracy to manufacture,

distribute, and use cocaine base, and sentenced to 300 months incarceration. His

appeal alleges a host of due process violations, notably prosecutorial misconduct,

in addition to improper jury instructions and sentencing violations. We find no reversible error in his trial proceedings, and we **AFFIRM** the conviction and sentence.

## I. Facts and Procedural Background

On July 13, 2005, Mr. Jones and five co-defendants were indicted for conspiracy and possession with intent to distribute cocaine base. Two co-defendants pleaded guilty prior to trial. At trial, the two were called as witnesses. The court entered into evidence, without prosecutorial comment, their plea agreements. Each of these conditioned a lower sentence on whether "the Defendant continues to cooperate with the United States in an honest and truthful manner." R. Vol. 2, Doc. 222, at 5.

At trial, an agent from the Bureau of Alcohol, Tobacco, and Firearms testified that a material witness in the case, James Kirby Davis, was kept in jail prior to his grand jury testimony "to ensure truthful and accurate unbiased testimony." R. Vol. 10 at 22. An agent from the Drug Enforcement Agency also testified that the government uses proffers, in which the government meets with co-defendants to discuss the possibility of plea agreements, as opportunities to "gauge kind of their truthfulness." R. Vol. 5 at 16. No objections were made to any of the above.

On the second day of trial, during the afternoon break, a juror was outside of the jury room, and he briefly viewed the defendants in leg shackles. The

parties discussed the possibility of a curative instruction, but ultimately the defendants decided that such an instruction would draw more attention to the incident. They therefore agreed to allow it to pass unmentioned. Mr. Jones's lawyer made no objection to that decision, and the court made no inquiry of the juror in question.

The other three co-defendants pleaded guilty after six days of trial testimony. After they did so, the judge informed the jury that those defendants and their charges had been removed from consideration, but gave no more thorough explanation. The next day, one of the former co-defendants, Levi Wilson, testified against Mr. Jones. The court at that time explained to the jury that Mr. Wilson had pleaded guilty, but instructed the jury not to use that as evidence of Mr. Jones's guilt. Mr. Jones immediately moved for a mistrial, based on the inference to the jury that defendants had pleaded guilty, and the prejudice that could result. The motion was denied.

During closing statements, the prosecutor regularly used the terms "I" and "we," including "we will ask you," "we will prove to you," and "I want to thank you." R. Vol. 4 at 38-39. The prosecutor also referred to the defendant as a "shark," to drugs as "poison," and to the defendant's actions as "preying upon weak people, addicts, addicted people." R. Vol. 10 at 65, 97. Defense counsel did not object.

After testimony was complete, the judge gave conflicting jury instructions. When detailing the conspiracy charge, he incorrectly told the jury – twice, in rapid succession – that they could find Mr. Jones liable for quantities of drugs that he could *not* have foreseen. Defense did not object at trial, and the judge did not correct himself. He subsequently both read and distributed to the jury a correct set of instructions, making clear that the defendant could be found liable only for quantities he *could* foresee.

The jury found Mr. Jones guilty, and the district judge sentenced him to 300 months in prison. The sentence was based in part on a two-level enhancement under the Sentencing Guidelines for possession of a firearm, which was found by the judge under a preponderance of the evidence standard. Mr. Jones registered an objection to the enhancement at the time of sentencing.

## II. Prosecutorial Misconduct

Mr. Jones failed to lodge objections with respect to any of the claims of trial error he now notes on appeal, with the exception of the testimony by Mr. Wilson and the final, sentencing claim. We review the unpreserved claims for plain error. *Jones v. United States*, 527 U.S. 373, 389 (1999). In order to grant relief, we must find error that is plain, that affects substantial rights, and that "seriously affects the fairness, integrity, or public reputation of the judicial proceedings." *Id.* (internal quotation marks and citations omitted).

### A. *Vouching for witnesses*

Mr. Jones first alleges that the government improperly vouched for the truthfulness of its witnesses.   It is a due process error for a prosecutor to indicate "a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *United States v. Bowie*, 892 F.2d 1494, 1498 (10th Cir. 1990).

But while guaranteeing the truthfulness of a witness's testimony is impermissible, presenting evidence of his or her obligation or motivation to testify truthfully is unobjectionable.  *Id.*  Plea agreements fall into the latter category.  It is well established that prosecutors may admit plea agreements, even those which include truthfulness provisions, without violating the dictates against vouching.  *United States v. Magallanez,* 408 F.3d 672, 680 (10th Cir. 2005); *United States v. Lord*, 907 F.2d 1028, 1031 (10th Cir. 1990).  "Use of the 'truthfulness' portions of these agreements becomes impermissible vouching only when the prosecutors explicitly or implicitly indicate that they can monitor and accurately verify the truthfulness of the witness' testimony." *Bowie*, 892 F.2d at 1498.

Mr. Jones alleges that the plea agreements at issue in this case are different from those at issue in *Lord* and *Magallanez*, because they require the signatories to "*continue*[] to cooperate with the United States in an honest and truthful manner." R. Vol. 2, Doc. 222, at 5 (emphasis added).  Defendant argues that, by

using such a phrase, the government implied that the witnesses have already provided some "honest and truthful" information, and therefore is claiming that it can "monitor and accurately verify" the witnesses' testimony.

That interpretation does not accord with our precedent. In *United States v. Harlow*, 444 F.3d 1255, 1262-63 (10th Cir. 2006), we upheld the admission of a nearly identical provision, distinct only in the use of the adjective "ongoing" rather than the verb "to continue." We wrote: "the provision's language contains no explicit or implicit requirement that the prosecutor monitor or verify the truthfulness of the witness' testimony, it merely requires the witness to testify truthfully or else the agreement *may* be rescinded." *Id.* at 1263. The same logic applies here. The government merely introduced evidence of a pledge by defendants that they both had testified truthfully and would continue to testify truthfully; nothing in that constitutes vouching.

Mr. Jones also objects to the testimony of a government witness relating to proffers. Mr. Jones argues that by stating that proffers are used to "gauge truthfulness" and by stating at other times during the trial that government witnesses had gone through proffers, the government was vouching for their veracity. These statements do not meet our standard for vouching for the same reasons as the statements above: they did not amount to guarantees concerning the veracity of the witnesses. As we noted in *Harlow*, "One would hope a prosecutor had an expectation of truthfulness from every witness he called. [But] verified

-6-

truthfulness is not a precondition to the witness testifying, and the government does not assume the burden of monitoring for accuracy." *Id.* In addition, the defendant opened the door to such testimony in his opening statements by implying that the government used a proffer to coerce a witness into giving false testimony. That left the government the necessity of explaining how it uses proffers; it did so without impermissibly referring to the credibility of any witnesses.

Testimony that a witness was kept in jail to ensure his truthfulness fails the test for vouching for the same reason. The government was not saying that Mr. Davis's testimony actually *was* truthful; only that they *desired* it to be so. None of these three claims rises to the level of impermissible vouching.

## B. *Statements at closing argument*

Defendant objects to the prosecutor's use of "I" and "we" in closing arguments. We have held, and the defendant acknowledges, that the use of personal pronouns in closing argument is not a *per se* due process violation. *United States v. Carleo*, 576 F.2d 846, 851-52 (10th Cir. 1978). The key issue is not the form but the content of such statements. A prosecutor may not express his personal opinion, *United States v. Rios*, 611 F.2d 1335, 1343 (10th Cir. 1979), or place his own integrity and credibility at issue, *United States v. Latimer*, 511 F.2d 498, 503 (10th Cir. 1975). But if such statements are merely "mannerism," or a

verbal tic, they are improper but not actionable. *Carleo*, 576 F.2d at 852. The prosecutor's occasional use of the first person in this case does not cross the line.

Mr. Jones also finds prosecutorial misconduct in the government's references in closing arguments to drugs as poison and the defendant as a shark. The Supreme Court noted in *United States v. Young*, 470 U.S. 1, 9 n.7 (1985), that it is improper to use closing argument to inflame the passions and prejudices of the jury. *See also United States v. Pena*, 930 F.2d 1486, 1490-91 (10th Cir. 1991). That is balanced, however, by the acknowledgment that in "an emotionally charged trial," the prosecutor's closing argument "need not be confined to such detached exposition as would be appropriate in a lecture." *United States v. Lotspeich*, 796 F.2d 1268 (10th Cir. 1986); *United States v. Bishop*, 534 F.2d 214, 220 (10th Cir. 1976) (quoting *United States v. Isaacs*, 493 F.2d 1124, 1164 (7th Cir. 1974).

The language used by the government here is less problematic than language we have previously deemed permissible. We have upheld references to the defendant as "a monster," *Malicoat v. Mullin*, 426 F.3d 1241, 1256 (10th Cir. 2005), and other circuits have held it is not plain error when the defendant is referred to as "a lizard," "a nine-headed hydra monster," or "a predator." *See United States v. Renwald*, 889 F.2d 836, 862 (9th Cir. 1989); *Byrd v. Collins*, 209 F.3d 486, 536 (6th Cir. 2000). Although we have never specifically addressed the propriety of labeling drugs as "poison," we have upheld their depiction as

"destructive" and "dangerous." *United States v. Dickey*, 736 F.2d 571, 592 (10th Cir. 1984). The Fourth Circuit wrote in an unpublished opinion that referring to drugs as poison is "within the proper bounds of closing arguments." *United States v. McKoy,* 129 Fed. Appx. 815, 828 (4th Cir. 2005).

Moreover, when reviewing on a plain-error standard, prosecutorial misstatements, even if "inappropriate and amounting to error," must be so severe "as to undermine the fundamental fairness of the trial and contribute to a miscarriage of justice," in order to amount to a due process violation. *Young*, 470 U.S. at 16. The prosecutor's statements may not have been ideal trial practice, but they were not plain error, and we find no grounds for reversal.

### III. View of the defendant in shackles

In itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial. *United States v. Simpson*, 950 F.2d 1519, 1522 (10th Cir. 1991); *United States v. Johnson*, 911 F.2d 1394, 1397 (10th Cir. 1990). Such an incident must result in prejudice to violate due process, and the burden is on the defendant to show such prejudice. *United States v. Ware*, 897 F.2d 1538, 1542 (10th Cir. 1990), abrogated on other grounds by *United States v. Jones*, 235 F.3d 1231 (10th Cir. 2000).

Defendant concedes that he made no objection at trial, and that he makes no showing of actual prejudice here. Mr. Jones also had opportunity to request a curative jury instruction, and declined to do so. He argues that his burden to

show prejudice is relieved by the court's error in not making further inquiries as to whether the incident biased the juror in question. In fact, any inquiries into juror bias would have been impermissible. Under Fed. R. Evid. 606(b), questioning of a juror who has been exposed to extraneous information "is limited to the circumstances and nature of the improper contact," and questions bearing on the "subjective effect of the contact on the juror's decision-making" are prohibited. *United States v. Hornung*, 848 F.2d 1040, 1045 (10th Cir. 1988). The district court acted properly, and we find no prejudicial error in the incident at issue.

### IV. Co-defendant testimony

We generally review the denial of a motion for a mistrial or a new trial for abuse of discretion. *United States v. Cerrato-Reyes*, 176 F.3d 1253, 1258 (10th Cir. 1999), abrogated on other grounds by *United States v. Duncan*, 242 F.3d 940 (10th Cir. 2001). However, when the court's decision rests on an issue of law, as here, we review *de novo*. *United States v. Ailsworth*, 138 F.3d 843, 846 (10th Cir. 1998).

In any trial with multiple defendants, it is imperative that a co-defendant's guilty plea not be used as substantive evidence of a defendant's guilt. *United States v. Baez*, 703 F.2d 453, 455 (10th Cir. 1983). Nevertheless, we have held that the judge may inform the jury when a co-defendant changes his plea to guilty in the middle of trial, although it is generally preferable not to. *Id*. Nor is it

grounds for a mistrial for the court to allow a former co-defendant subsequently to testify for the government. *United States v. Massey*, 48 F.3d 1560, 1569-70 (10th Cir. 1995). In such cases, it is permissible for the court to explain that the co-defendant has entered into a plea agreement, but "cautionary instructions limiting the jury's use of the guilty plea to permissible purposes are critical." *Baez*, 703 F.2d at 455. The judge instructed the jury twice not to draw adverse conclusions from Mr. Wilson's guilty plea, and we find no error in the denial of the motion for a mistrial.

### V. Jury instructions

Jury instructions must be read and evaluated in their entirety. *Cupp v. Naughten*, 414 U.S. 141, 146-47 (1973). We assess whether "the instructions, examined in the light of the record as a whole, fairly, adequately, and correctly state the governing law and provide the jury with an ample understanding of the applicable principles of law and factual issues confronting them." *United States v. Denny,* 939 F.2d 1449, 1454 (10th Cir. 1991). "[T]he proper inquiry is not whether the instruction 'could have' been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." *Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (citing *Estelle v. McGuire*, 502 U.S. 62, 72 & n.4 (1991)).

In Mr. Jones's trial, the judge gave incorrect oral instructions, followed by correct oral instructions, correct written instructions, and a correct form for the

jury to fill out during sentencing. Mr. Jones attempts to analogize this situation to *Yates v. United States*, in which the Supreme Court overturned a conviction when the jury was permitted to consider a legally impermissible theory, even though the conviction could have rested on other, permissible theories. 354 U.S. 298 (1957), overruled on other grounds by *Burks v. United States*, 437 U.S. 1, 18 (1978). The question in this case, however, is not which of two alternate grounds the jury relied on; it is whether the jury properly understood the one legal theory placed in front of it.

We have held in an unpublished opinion that an incorrect oral instruction – a "slip of the tongue" – without more is not plain error when the jury had correct written instructions available during deliberations. *United States v. Stewart*, 16 Fed. Appx. 937, 940 (10th Cir. Aug. 10, 2001) (unpublished opinion). We cite this decision not because it has precedential value, but because we find its conclusion persuasive. Five other circuits have found such errors to be either harmless or not plain. *United States v. Phipps*, 319 F.3d 177, 189-90 (5th Cir. 2003) (not plain error); *United States v. Granados,* 142 F.3d 1016, 1022-23 (7th Cir. 1998) (not plain error); *United States v. Ancheta*, 38 F.3d 1114, 1116-17 (9th Cir. 1994) (not plain error); *United States v. Gold*, 743 F.2d 800, 821-22 (11th Cir. 1984) (harmless error); *United States v. Rosa*, 493 F.2d 1191, 1195 (2d Cir. 1974) (harmless error). We adopt those holdings here.

The matter of jury comprehension is a highly fact-based, circumstances-dependent one, which the district court is far better positioned to consider than we. The fact that defense counsel as well as the experienced district judge were unperturbed by the error, if they noticed it at all, weighs heavily. Moreover, "[t]he absence of objection suggests that the mistake was not noticeable or confusing." *Ancheta*, 38 F.3d at 1117. A lack of objection is not always fatal, of course. When there is a real possibility that jury instructions are misunderstood, such as where incorrect verbal instructions are not corrected by written instructions, the error may warrant reversal. *See Turrentine v. Mullin*, 390 F.3d 1181, 1194 (10th Cir. 2004). If there had been an indication that anyone in the courtroom – counsel, parties, or jurors – was confused, we might find this a more difficult question. As there was no such indication, and as we are convinced that no reasonable juror would have been misled by the instructions, we find that the district court committed no plain error in allowing the jury instructions to stand.

## VI. Sentencing

Mr. Jones argues that his sentence could not constitutionally be enhanced on the basis of a fact found by the judge rather than the jury. We assume this argument is put forward for the purposes of preservation. It is inconsistent with the remedial holding of *United States v. Booker*, 543 U.S. 220 (2005), which permits enhancements on the basis of judge-found facts pursuant to the non-

advisory guidelines system. *See United States v. Magallanez,* 408 F.3d 672, 684 (10th Cir. 2005).

## VII. Cumulative error

Mr. Jones also argues that the cumulative effect of all of the errors alleged above is a generalized due process violation. "A cumulative-error analysis merely aggregates all the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless." *United States v. Rivera*, 900 F.2d 1462, 1470 (10th Cir. 1990). In conducting a cumulative error analysis, we must identify specific rulings or failures to rule by the trial court that violate a defendant's constitutional rights, and assess only the impact of those. *Id*. at 1470-71; *United States v. Smith*, 776 F.2d 892, 898-99 (10th Cir. 1985). We have found no harmless error in the district court's rulings and non-rulings above; thus *a fortiori* we find no cumulative error.

## VIII. Conclusion

Because we find no error of constitutional magnitude in Mr. Jones's claims, we **AFFIRM** both the conviction and the sentence.