FILED
United States Court of Appeals
Tenth Circuit

December 2, 2008

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

v.

BROCKE A. GRAHAM,

Defendant-Appellant.

No. 08-3010
(D.C. No. 2:06-CR-20169-CM-1)
(D. Kan.)

**ORDER AND JUDGMENT**[*]

Before **HENRY**, Chief Judge, **EBEL** and **GORSUCH**, Circuit Judges.

After Brocke A. Graham was convicted on five counts of a superseding indictment involving drug trafficking, weapons possession, and witness intimidation, the district court sentenced him to 235 months' imprisonment. He appeals both his conviction and sentence. Exercising jurisdiction under 18 U.S.C. § 3742 and 28 U.S.C. § 1291, we affirm.

---

[*]     After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. *See* Fed. R. App. P. 34(f); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

## I. Background

Upon suspicion that Mr. Graham twice sold small quantities of cocaine base (crack cocaine) to confidential informants in controlled purchases, police officers of the City of Leavenworth, Kansas, obtained a search warrant and raided his apartment, seizing 32.98 grams of crack cocaine, a scale, cash, a handgun, an "owe list," and assorted drug paraphernalia. He was later arrested and, after a jury trial, convicted of two counts of distribution of a quantity of a mixture and substance containing a detectable amount of crack cocaine in violation of 21 U.S.C. § 841(b)(1)(C); one count of possession with intent to distribute a mixture and substance containing five grams or more of crack cocaine, in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B)(iii); one count of being a felon in possession of a firearm in violation of 18 U.S.C. §§ 922(g)(1) and 924(a)(2); and one count of witness tampering, in violation of 18 U.S.C. §§ 1512(b)(1) and 2. He was acquitted of one count of possession of a firearm in relation to a drug trafficking offense in violation of 18 U.S.C. § 924(c).

Relying on a presentence investigation report (PSR) at sentencing, the district court calculated Mr. Graham's base offense level under the United States Sentencing Guidelines to be 32, based on a finding that at least 150 grams but less than 500 grams crack cocaine was attributable to him. *See* U.S.S.G.

§ 2D1.1(c)(4).[1]  The court also applied a two-level increase for possession of a dangerous weapon, *see id.* § 2D1.1(b)(1), and a two-level increase for obstruction of justice, *see id.* § 3C1.1, resulting in a total offense level of 36.  Based on Mr. Graham's criminal history category of III, the Guidelines range for imprisonment was 235 to 293 months.  The court sentenced Mr. Graham at the bottom of the range—235 months' imprisonment on counts one, two, and three, and 120 months' imprisonment on counts five and six, to run concurrently.

## II.  Discussion

In appealing both his conviction and sentence, Mr. Graham asserts six errors:  (1) the prosecutor's comments during rebuttal argument denied him a fair trial; (2) the prosecutor improperly elicited testimony that bolstered an informant's credibility; (3) the district court erred in failing to inform the jury to overlook an informant's hearsay testimony; (4) the district court erred in overruling a hearsay objection to a police officer's testimony that he commenced an investigation of Mr. Graham because other people told him they had heard someone named "Brocke" was selling crack; (5) in determining his sentence, the district court erred in applying the dangerous-weapon enhancement and in calculating the drug quantity; and (6) the district court failed to apply a recent,

---

[1]     The PSR used the November 1, 2007, edition of the Guidelines, and our citations are to that edition unless otherwise noted.

retroactive amendment to the Guidelines that reduces by two the base offense level for crack cocaine offenses.  We address each issue in turn.

### A.  The prosecutor's comments during rebuttal argument

Mr. Graham first claims he was denied a fair trial because, during rebuttal argument, the prosecutor improperly likened defense counsel to a magician who uses tricks and smoke to divert attention away from the facts.  The government counters that the comments were in response to defense counsel's statements, made during voir dire and opening argument, that the prosecution's case was nothing but "'smoke and fire.'"  Resp. Br. at 7.  The government also argues that the prosecutor's isolated comment could not have affected the outcome of the trial in view of the overwhelming evidence presented against Mr. Graham.

Because Mr. Graham did not object to the prosecutor's comments at trial, we review for plain error.  *See* Fed. R. Crim. P. 52(b); *United States v. Dazey*, 403 F.3d 1147, 1170 (10th Cir. 2005).  "To establish plain error, Mr. [Graham] must demonstrate that the district court (1) committed error, (2) that the error was plain, and (3) that the plain error affected his substantial rights."  *Id.* at 1174.  "If all these conditions are met, [we] may exercise discretion to correct [the error] if [it] seriously affects the fairness, integrity, or public reputation of judicial proceedings."  *Id.*

As the government notes, defense counsel referred to smoke and fire during voir dire and opening argument:

> I used the analogy during voir dire of where there's smoke there's fire, and that [it] looks like this guy's a drug dealer, he certainly fits the profile, he's kind of a young black kid. . . . We know he has a felony past. Gosh, that sounds like a drug dealer to me. And then you're going to hear the government bring in all of the witnesses, but it's all the smoke. But when it comes down to actually seeing the fire, there are going to be some pieces missing.

R., Vol. III, at 27:6-16. After discussing what pieces of evidence might be missing, defense counsel stated:

> It seems really straight forward when you hear it from the prosecutor's perspective, and I'll acknowledge that at first blush, you see a lot of smoke and you think, wow, there must be a really big fire there. . . . But . . . I think you're going to find that there's [sic] some big gaps [in the evidence].

*Id.* at 35:9-19.

> In turn, at the outset of rebuttal closing argument, the prosecutor began:

> When you go to a magic show, [a] magician comes out, and he throws something on the ground, and this big puff of smoke comes up and diverts your attention, and then all of a sudden, something appears that wasn't there before, and he does that for the purpose of diverting your attention and make you think he's created some magic act, and really, what he's done is blow smoke in your face to give you that optical illusion. And [defense counsel] in his opening and on voir dire talked about where there's smoke, there's fire. And . . . the arguments [defense counsel] has made[,] smoke and mirrors, that's what that is, to divert your attention away from what the real evidence is.

*Id.*, Vol. V, at 587:10-22.  The prosecutor continued on to discuss why the jury should not be persuaded by defense counsel's attempt to demonstrate gaps in the evidence.

We see little of concern in this exchange of metaphoric rhetoric. Generally, a "prosecutor is afforded considerable latitude" in responding to arguments by defense counsel.  *United States v. Brewer*, 630 F.2d 795, 803 (10th Cir. 1980).  But "[a]ttacks on defense counsel can at times constitute prosecutorial misconduct" when they disparage counsel or suggest untruthfulness. *Wilson v. Sirmons*, 536 F.3d 1064, 1119 (10th Cir. 2008).  Here, the prosecutor's comments did not call defense counsel's character or truthfulness into question. Nor did the prosecutor make the comments in an effort to persuade the jury to render a conviction on grounds beyond the evidence, which we have implied is improper, *see Devine v. United States*, 403 F.2d 93, 96 (10th Cir. 1968).  Rather, these comments were isolated and made in an apparent effort to focus the jury on the admissible evidence and explain why the evidentiary gaps that defense counsel tried to open were not an impediment to a guilty verdict.  Accordingly, they were a permissible response to defense counsel's use of similar imagery to show weakness in the evidence and do not warrant reversal under the plain error standard of review.

**B. Testimony bolstering an informant's credibility**

Mr. Graham next argues that the prosecutor improperly elicited testimony that bolstered the credibility of one of the informants by asking Leavenworth police officer Neil Vogel whether information the informant had supplied in prior investigations had proved reliable. The government contends that this testimony was properly used to counter defense efforts to call the informant's credibility into question. Because there was no objection at trial, our review is for plain error. *See* Fed. R. Crim. P. 52(b).

In support of his argument, Mr. Graham relies on the tenet that a prosecutor may not "indicate a personal belief in the witness' credibility, either through explicit personal assurances of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." *United States v. Jones*, 468 F.3d 704, 707 (10th Cir. 2006) (quotation omitted). But here, it was Officer Vogel, not the prosecutor, who vouched for the informant's past reliability. *Jones* therefore is inapposite. Mr. Graham has not identified, nor have we found, any relevant authority to support his argument. Thus, we see no plain error in the prosecutor's line of questioning.

**C. Failure to advise jury to overlook informant's hearsay testimony**

The third argument Mr. Graham raises concerns the testimony of one of the confidential informants that Mr. Graham's sister drove by and yelled out the car window, "I know you snitched out my brother, bitch." R., Vol. III, at 114:15.

The district court sustained a hearsay objection but did not advise the jury to overlook the comment. This comment, Mr. Graham contends, was used to establish his conviction on count six, witness tampering. The government says the statement was not relevant to count six, and that in any event, other evidence was sufficient to support that charge, rendering any error harmless.

Because Mr. Graham did not ask the court for a curative instruction, we review for plain error. *See* Fed. R. Crim. P. 52(b). To begin, we question whether the statement was hearsay because it was not offered to prove that the informant had in fact "snitched out" Mr. Graham, the truth of which was not at issue. Instead, it appears the statement was offered to show simply that it was made. "It is well settled that testimony is not hearsay when it is offered to prove only that a statement was made and not the truth of the statement." *M.F. Patterson Dental Supply Co. v. Wadley*, 401 F.2d 167, 172 (10th Cir. 1968). As further explained in the Advisory Committee's notes to Rule 801 of the Federal Rules of Evidence:

> If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay. . . . The effect is to exclude from hearsay the entire category of "verbal acts" and "verbal parts of an act," in which the statement itself affects the legal rights of the parties or is a circumstance bearing on conduct affecting their rights.

Fed. R. Evid. 801 advisory committee's note to subdivision (c); *see also United States v. Faulkner*, 439 F.3d 1221, 1226 (10th Cir. 2006) (quoting and relying on

the advisory committee's note). Thus, it appears to us that the statement was not hearsay.

Even if the statement was hearsay, we see no clear error in the district court's failure to tell the jury to disregard it. At the outset of trial, the court gave the jury a preliminary verbal instruction regarding objections: "You should not be influenced by the objection or by the court's ruling on it. If the objection is sustained, ignore the question. If it is overruled, treat the answer like any other." R., Vol. III, at 11:23 to 12:1. In a written instruction given to the jury at the close of trial, the court again addressed the matter:

> During the trial, I did not let you hear the answers to some of the questions the lawyers asked. And sometimes I ordered you to disregard things that you saw or heard, or I struck things from the record. You must completely ignore all of these things. Do not even think about them.

*Id.*, Vol. I, doc. 63, Instruction No. 4. Although the instructions could have stated more specifically that, when the court sustained an objection to a question, the jury was to ignore the answer as well as the question, we conclude that the instructions, as given, adequately conveyed this notion to the jury. And because "[a] jury is presumed to follow its instructions," *Weeks v. Angelone*, 528 U.S. 225, 234 (2000), we see no plain error in the court's failure to also provide a contemporaneous, sua sponte admonition to the jury to disregard the informant's testimony regarding the statement of Mr. Graham's sister.

**D. Police officer's testimony about commencement of investigation**

Mr. Graham raised a hearsay objection to a line of questioning to Officer Vogel concerning the commencement of the investigation leading to Mr. Graham's arrest. The district court overruled the objection and permitted Officer Vogel to testify that prior to becoming acquainted with one of the confidential informants, he had heard from several other people that someone named "Brocke" was selling crack in a certain neighborhood. When the informant later indicated that he, too, knew of a "Brocke" that was selling crack, and provided more details, including an address that correlated with the previously identified neighborhood and a telephone number, Officer Vogel decided to set up a controlled buy. The district court ruled that the testimony was not hearsay because it was not offered for the truth of the matter asserted, but for the limited purpose of explaining why Officer Vogel began his investigation.

Our review of the district court's evidentiary ruling is for an abuse of discretion. *United States v. Norman T.*, 129 F.3d 1099, 1105 (10th Cir. 1997). We have held that out-of-court statements by informants are not hearsay when offered for the limited purpose of explaining why an investigation was started. *United States v. Freeman*, 816 F.2d 558, 563 (10th Cir. 1987). Officer Vogel's testimony was offered for that purpose, and the evidence was relevant to counter statements defense counsel made during opening argument that there was no evidence regarding the commencement of the investigation of Mr. Graham. Such

evidence also must be evaluated under Rule 403 of the Federal Rules of Evidence. *See Freeman*, 816 F.2d at 563. In pertinent part, Rule 403 requires a court to evaluate whether the "probative value [of relevant evidence] is substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403. The district court did not explicitly perform this task, but we have little problem concluding that Officer Vogel's testimony regarding the general statements of third parties that "Brocke" had sold them crack cocaine did not unfairly prejudice Mr. Graham because it was overshadowed by the much more specific testimony of three other witnesses (including one of the informants) that they previously had purchased crack cocaine from Mr. Graham. Also, Officer Vogel and Officer Ryan Park both testified that during the raid, Mr. Graham admitted to them he had been selling crack cocaine for five years, which further reduces any concern about unfair prejudice. We therefore see no abuse of the district court's discretion in overruling the hearsay objection.

### E. Sentencing error: Total offense level

Turning to his sentence, Mr. Graham argues that the district court erred in calculating his total offense level under the Guidelines when it (i) applied a two-level enhancement for possession of a dangerous weapon and (ii) calculated drug quantity. Because Mr. Graham lodged timely objections to these aspects of his sentencing, we review the district court's factual findings for clear error and its legal interpretation of the guidelines de novo. *United States v. Norman*,

129 F.3d 1393, 1398 (10th Cir. 1997). We will not disturb findings unless they are "without factual support in the record, or if after reviewing all the evidence we are left with the definite and firm conviction that a mistake has been made." *United States v. Garcia*, 78 F.3d 1457, 1462 (10th Cir. 1996) (quotation omitted).

**Dangerous weapon enhancement.** Mr. Graham argues that the two-level enhancement under U.S.S.G. § 2D1.1(b)(1) for possession of a dangerous weapon was improper because there was no direct nexus between the drug sale and the gun that was found during the raid. Mr. Graham claims that he bought the gun for personal protection, not to facilitate drug transactions. Also, he points out that the gun was found in his roommate's room, and that the jury acquitted him of the charge of using a gun in furtherance of drug trafficking.

We are not persuaded by these arguments. The dangerous-weapon enhancement "should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the [drug] offense." U.S.S.G. § 2D1.1, cmt. n. 3. "The government bears the initial burden of proving possession of the weapon by a preponderance of the evidence." *United States v. Williams*, 431 F.3d 1234, 1237 (10th Cir. 2005). "This burden is satisfied when the government demonstrates that a temporal and spatial relation existed between the weapon, the drug trafficking activity, and the defendant." *Id.* (quotation omitted). Moreover, "the government need only show that the weapon was found in the same location where drugs or drug paraphernalia [were] stored." *Id.*

(quotation omitted). If the government meets its burden, then the defendant must "show that it is clearly improbable the weapon was connected with the offense." *Id.* at 1238. "For example, the enhancement would not be applied if the defendant, arrested at his residence, had an unloaded hunting rifle in the closet." U.S.S.G. § 2D1.1 cmt. n. 3.

As the government points out, one informant testified that the gun was lying on the floor of the living room during the first controlled buy. Officer Vogel testified that during the raid, Mr. Graham admitted that he bought the gun for protection after the theft of $12,000 in drug money a couple of weeks earlier. That testimony was consistent with the testimony of Mr. Graham's roommate. Another witness testified that he had purchased the gun at Mr. Graham's request and with money Mr. Graham gave to him. And Officer Parker testified that Mr. Graham admitted he gave the gun to his roommate just prior to the raid because he was leaving town and his roommate was going to use the gun for protection. Moreover, the gun box and ammunition were found in Mr. Graham's room. Thus, the government produced sufficient evidence of the nexus between the crack cocaine sales and the gun, and Mr. Graham has failed to show that it was clearly improbable the weapon was connected with the offense. The fact that he was not convicted on the gun-in-furtherance charge does not preclude application of the enhancement. *See United States v. Magallanez*, 408 F.3d 672, 684 (10th Cir. 2005) (holding that "[a] jury verdict of acquittal on related

conduct . . . 'does not prevent the sentencing court from considering conduct underlying the acquitted charge, so long as that conduct has been proved by a preponderance of the evidence'") (quoting *United States v. Watts*, 519 U.S. 148, 157 (1997) (per curiam)).

**Drug quantity.** The only issue with regard to the drug-quantity calculation that Mr. Graham has raised on appeal concerns the conversion of the stolen $12,000 to 126.01 grams of crack cocaine. The district court overruled Mr. Graham's objection that there was insufficient evidence linking the $12,000 exclusively to crack cocaine sales. In so doing, the court stated that it relied on the trial testimony and the summation of the testimony relevant to drug quantity set out in paragraph fifteen of the PSR, and specifically noted Mr. Graham's admission "that there was in fact $12,000 stolen from his residence, and that this $12,000 was the result of drug proceeds," R., Vol. VII, at 40:13-15. On appeal, Mr. Graham repeats his contention that there was insufficient proof that all of the $12,000 came from crack cocaine sales. We disagree.

"In calculating the quantity of drugs which may be attributed to a defendant, the sentencing court may consider a wide range of information so long as it bears the minimum indicia of reliability to support its probable accuracy. Estimates of drug quantities for which a defendant will be held accountable are acceptable so long as supported by the facts." *United States v. Portillo-Quezada*, 469 F.3d 1345, 1356 n.6 (10th Cir. 2006) (per curiam) (quotation and citation

-14-

omitted), *cert. denied*, 127 S. Ct. 3066 (2007).  And sums of cash can be converted to drug quantities and attributed to the defendant if "the court finds by a preponderance that the cash is attributable to drug sales which were part of the same course of conduct . . . as the conviction count."  *United States v. Rios*, 22 F.3d 1024, 1027 (10th Cir. 1994).

In view of the evidence as a whole, we cannot say that we are left with a definite and firm conviction that the district court made a mistake in converting the $12,000 to crack-cocaine quantity.  Officer Parker testified that during the raid, Mr. Graham admitted he purchased the gun because of the theft of $12,000 he made selling crack cocaine, not the broader "drug proceeds" referenced at sentencing.  Also, there is no suggestion in the evidence, nor did Mr. Graham advance any evidence, that he had ever dealt any drugs other than crack cocaine.  *See United States v. Todd*, 515 F.3d 1128, 1137 (10th Cir. 2008) (considering it significant that defendant had offered no evidence demonstrating that confiscated drugs were the product of a course of conduct other than that of the count of conviction).  Indeed, Mr. Graham's roommate testified that in two months of living with Mr. Graham, he had never seen Mr. Graham sell anything other than crack cocaine, and again, both Officer Parker and Officer Vogel testified that Mr. Graham admitted to selling crack cocaine for the previous five years.  Thus, the facts supporting the district court's attribution of 126.01 grams of crack cocaine to Mr. Graham by virtue of the stolen $12,000 bear the "minimum indicia

-15-

of reliability to support its probable accuracy." *Portillo-Quezada*, 469 F.3d at 1356 (quotation omitted).

## F. Sentencing Error: Application of Amendment 706

Mr. Graham's final argument concerns Amendment 706 to the Guidelines, which "took effect Nov. 1, 2007 and was made retroactive as of March 3, 2008." *United States v. Sharkey*, 543 F.3d 1236, 1237 (10th Cir. 2008); *see also* U.S.S.G. Supp. to App'x C, Amend. 706 (Nov. 1, 2007); U.S.S.G. Supp. to the 2007 Supp. to App'x C (March 3, 2008). In pertinent part, Amendment 706 lowered the base offense level from 34 to 32 for crack cocaine offenses involving 150-500 grams of cocaine base. *Compare* U.S.S.G. § 2D1.1(c)(4) (2007) *with id.* § 2D1.1(c)(4) (2006). Mr. Graham contends that by virtue of Amendment 706, he is entitled to a two-level reduction in his base offense level under U.S.S.G. § 1B1.10, which permits a court to reduce a defendant's term of imprisonment if a sentencing range has subsequently been lowered by an amendment enumerated in that section, including Amendment 706. But contrary to Mr. Graham's belief, the district court used the reduced base-level calculation of 32 effected by Amendment 706. Indeed, sentencing occurred on January 4, 2008, after the effective date of Amendment 706, and the district court relied on the PSR, which

used the amended version of the Guidelines effective November 1, 2007. Therefore, he is not eligible for a reduction in sentence under § 1B1.10.

## III. Conclusion

We AFFIRM Mr. Graham's conviction and sentence.


Entered for the Court


Robert H. Henry
Chief Judge