FILED
United States Court of Appeals
Tenth Circuit

August 22, 2014

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

     Plaintiff - Appellee,

v.

GARRICK VEATER,

     Defendant - Appellant.

No. 13-4002
(D.C. No. 2:09-CR-00761-DAK-1)
(D. Utah)

**ORDER AND JUDGMENT**[*]

Before **BRISCOE**, Chief Judge, **EBEL** and **MATHESON**, Circuit Judges.

A jury convicted Defendant-Appellant Garrick Veater of one count each of

production and possession of child pornography, in violation of 18 U.S.C. §§ 2251(a) and

2252(a)(5)(B). With respect to the production count, the jury returned a special verdict

unanimously finding Veater guilty of producing thirty-eight pornographic images of the

---

[*] After examining the briefs and appellate record, this panel has determined unanimously to grant the parties' request for a decision on the briefs without oral argument. See Fed. R. App. P. 34(f) and 10th Cir. R. 34.1(G). This case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

child victim.   The district court sentenced Veater to 204 months' imprisonment to be followed by 180 months' supervised release.   Veater now appeals his conviction, asserting three unpreserved trial court errors: (1) that the district court violated the Confrontation Clause by limiting his cross-examination of the victim's mother; (2) that the district court erroneously admitted irrelevant and prejudicial propensity evidence; and (3) that the prosecutor improperly vouched for the victim's credibility in her closing statements to the jury.   Exercising jurisdiction under 28 U.S.C. § 1291, we now AFFIRM.

## I.   BACKGROUND

Veater and his girlfriend, Jane Doe, began living together around 2006.   The couple lived in an apartment in Provo, Utah with three children: their two-year-old daughter, and Doe's eight-year-old son and five-year-old daughter.   By all accounts, the couple's relationship began to sour in the year or so leading up to the accusations that formed the basis for this prosecution.   Doe distrusted Veater with other women, so she would regularly monitor the call and text message activity on his personal and work cell phones.   In early September 2009, around midnight, she was doing just that when she discovered three nude photos of her five-year-old daughter ("the victim") in the text message outbox of Veater's work phone.   The photos had been sent to Veater's personal phone.   Identifying, among other things, the tile and linoleum in the background of the pictures, Doe recognized that the photos had been taken in the couple's bathroom.   One of the photos depicted the lower portion of the victim's nude body as she sat in the bathtub,

2

while the other two photos were more focused on the victim's genitalia and buttocks.   In the third photo, for example, the victim was lying on her back with her legs over her head and obscuring her face.   Doe questioned the victim about the picture the next morning, and the victim admitted that Veater had taken similar pictures of her on more than one occasion.

Doe notified local police, who detained Veater and seized both of his phones as well as his home computer.   A subsequent forensic analysis of the cell phones, the personal phone's SD card, and the computer's hard drive recovered thirty-eight different pornographic images of the victim.[1]   Eighteen of those images were shown to the jury during the government's case, and the remaining twenty images were included on a CD for the jury to review during deliberations.   The automatic naming conventions for photos taken on Veater's phones allowed the government to present evidence on when each of the images was taken.   The images were taken over the course of a week between Sunday, August 23, 2009 and Sunday, August 30, 2009.   They were generally taken late in the evening or very early in the morning, and they were often captured in quick succession of two to six images at a time.   The naming conventions also helped the government trace the images through Veater's electronic devices.   While the majority of the pictures were taken with Veater's personal phone, others were taken with his work phone and transferred by

---

[1] Veater did not contest that the images met the definition of child pornography. He stipulated, moreover, that his cell phones and hard drive had moved in interstate commerce.

text message to his personal phone. Most of those images were then transferred by USB cable to Veater's personal computer, though some of the images were recovered from the personal phone's SD card alone. Many of the pictures recovered from Veater's computer were either buried within subfolders of a video game that Veater often played or retrieved from "orphan files" that had been superficially deleted but nonetheless remained in the master file table.

Beyond this forensic analysis based on the naming conventions, the images were also tied to Veater through direct testimony from Doe and the victim. For example, six images that forensic analysis confirmed as being taken on Veater's personal phone over a period of fifteen minutes starting at 6 a.m. in the morning were also identified through Doe's testimony that the couple's couch, floor, and towels could be seen in the background of the images. With respect to an image that appeared to show Veater's penis touching the victim's buttocks and back, moreover, Doe identified the victim based on her tan lines and identified Veater based on his underwear and her knowledge of him physically. Doe further testified that she did not take the pictures herself and that no other men were in the couple's apartment during the relevant time. The government also elicited incriminating testimony from the victim, who was eight years old at the time of trial. After asserting that Veater no longer lived with their family because "[h]e did bad stuff," the victim testified that Veater used his cell phone to take naked pictures of her "middle"—which she described as the area between her knees and her shoulders—when her mother was asleep in

4

the other room.   Supp. Vol. 2 at 122-23.   She also testified that she had asked Veater to stop taking pictures of her, but that he said "no."   Id. at 124.   Even though at least one of the recovered images appeared to show some sexual contact, the victim maintained that Veater had never touched her inappropriately.

For his part, Veater took the stand and testified that he had never seen, let alone produced, any of the images he was accused of producing and possessing.   He presented an alibi defense with respect to one set of the images, asserting that he could not have taken the photos because he was at his mother's house when they were produced.   The government vigorously challenged this defense by pointing out that some of Veater's alibi witnesses were drinking on the night in question, that there was conflicting testimony over when exactly Veater left his mother's party, and maybe most importantly, that Veater himself admitted that he had the phone that produced the images with him the entire time he was at his mother's house.   Veater also claimed that another set of the images were taken while he was at work, but according to his work timesheets, none of the images were produced while Veater was at work.   Neither Veater nor anyone else had a specific recollection as to his whereabouts or activities on the day that the final set of images was produced.   Testifying that he had an argument with Doe around the time of his mother's party, during which he told Doe that he was going to seek full custody of their two-year-old daughter, Veater's defense theory was that Doe had taken the pictures of the victim and placed them on his devices in an elaborate attempt to secure custody of their daughter.

## II.  DISCUSSION

Veater asserts three claims on appeal which, he says, warrant the reversal of his convictions.   First, he argues that the district court deprived him of his constitutional right to confront the witnesses against him by preventing him from recalling Doe and inquiring into matters that allegedly bore on her bias and credibility.   Second, he argues that he was unfairly prejudiced by the district court's allowing Doe to testify that, in addition to child pornography, she also found images of bestiality on Veater's phone.   Third, he argues that the prosecutor violated his due process rights by allegedly vouching for the victim's credibility in her closing statements to the jury.   None of these claimed errors were raised below, so each is subject to plain error review.   See United States v. Perez, 989 F.2d 1574, 1582 (10th Cir. 1993) (en banc) (confrontation clause); United States v. Schene, 543 F.3d 627, 640 (10th Cir. 2008) (evidentiary challenge); United States v. Fleming, 667 F.3d 1098, 1103 (10th Cir. 2011) (prosecutorial misconduct).   Under that standard, reversal is not required unless Veater can establish "(1) error, (2) that is plain, which (3) affects [his] substantial rights, and which (4) seriously affects the fairness, integrity, or public reputation of judicial proceedings."   United States v. Taylor, 514 F.3d 1092, 1100 (10th Cir. 2008).   For the reasons that follow, we need not proceed beyond the first step in that

6

analysis for any of Veater's claims because he has failed to establish that any errors occurred below.

### a. Confrontation Clause

Veater first argues that the district court violated the Confrontation Clause by denying his request to recall Doe to the stand for additional cross-examination. We disagree. When, as here, a defendant alleges that his right to confrontation was violated not because he was completely precluded from cross-examining a witness, but because the district court merely restricted that cross-examination in some way, the defendant bears the burden of establishing that, but-for the challenged restriction, "[a] reasonable jury might have received a significantly different impression" of the witness. See Delaware v. Van Arsdall, 475 U.S. 673, 680 (1986); see also United States v. Mullins, 613 F.3d 1273, 1284 (10th Cir. 2010). To put it another way, notwithstanding any limitations placed on the defendant's ability to cross-examine the witness, the Confrontation Clause is not violated so long as "the jury had sufficient information to make a discriminating appraisal of the witness' motives and bias." United States v. Oliver, 278 F.3d 1035, 1041 (10th Cir. 2001) (internal quotation marks omitted). Because Veater's extensive cross-examination of Doe provided the jury with the evidence to do just that, precluding Veater from recalling Doe did not violate his confrontation rights.

In an attempt to convince the jury that Doe had framed Veater by producing the pornographic images and placing them on Veater's electronic devices, Veater's counsel set out on cross-examination to expose the jury to facts which suggested that Doe had both the motive and propensity to perpetuate such an elaborate lie. By getting her to admit that, shortly before the images were produced, Veater had told her that he was going to seek full custody of their daughter and, further, that she did not want that to happen, Veater's counsel was able to suggest to the jury that Doe's true motive for testifying against Veater was winning a custody fight. Moreover, by getting Doe to also admit that she was a recovering addict (and had taken methadone on the morning of her testimony), that she had illegally obtained drugs to fuel that addiction, and that she had probably been engaged in welfare fraud throughout the time she and her children lived with Veater, Veater's counsel was also able to suggest to the jury that Doe was probably not someone to trust. Indeed, by contrasting Doe's assertion that she had never done drugs in front of her daughters with the victim's testimony that she had seen her mom snorting pills in the bathroom, Veater's cross-examination of Doe likely convinced the jury that Doe had lied under oath at least once during Veater's trial.

Evidently convinced that these questions were sufficient to leave the jury wondering whether Doe had in fact framed Veater for the alleged offenses, Veater's counsel informed the court that Doe could be excused. Shortly after Doe was excused, however, Veater's counsel had a change of heart and moved to recall Doe to inquire into

8

why she had refused to cooperate with a separate state investigation into whether the victim had been sexually abused by a different man around the same time that Doe had accused Veater of producing pornographic images of the victim. Without explaining why he never broached the subject during the just-completed cross-examination, Veater's counsel asserted that the additional questioning was necessary to impeach Doe's credibility. The district court replied, "Nothing else?" and Veater's counsel responded, "No." R. Supp. Vol. 2 at 111. He continued, "It goes to credibility in this fashion. I mean, our contention—I think it's clear to you, I think it's been clear from the beginning—is that this young lady has just testified—is not telling the truth about how these photographs were created, okay?" Id. at 113. The district court denied the request, concluding that Doe's involvement in the separate investigation was "quite peripheral" and "marginally relevant" to the case at hand and asserting that counsel had already "beat her around on her credibility, or lack of it." Id. at 115-18. While no objection was made at that time, after the jury convicted him on all counts, Veater renewed the argument in his motion for a new trial. According to that motion, he should have been permitted to recall Doe and question her about the other investigation because the "information would have been valuable to the jury in assessing her credibility and in demonstrating her bias against him because . . . [h]er willingness to impede justice in one case . . . must be contrasted with her pursuit of the present case against Mr. Veater, who, until his conviction, presented a real threat to her continued custody of her children." R. Vol. 1 at 202-203. The district court denied the

9

motion and upheld its decision to preclude Veater from recalling Doe for essentially the same reasons it gave from the bench. Although the court noted that Veater "appear[ed] to be arguing bias in his post-trial motion while he argued only credibility at trial," it held, first, that "the jury had sufficient information to appraise [Doe's] credibility, motives, and potential bias." Id. at 228-229. And second, not only had Veater "fail[ed] to demonstrate [the] relevance" of the "unrelated" and "dissimilar" allegation, but "[e]ven assuming marginal probative value of the evidence relative to bias, Rule 403 would have prohibited the introduction of [the] matter." Id. at 229.

Now on appeal, Veater argues for the first time that the district court violated the Confrontation Clause when it denied his request to recall Doe.[2] Not so. Although "[t]he right to cross-examine witnesses is an integral part of the broader Sixth Amendment right to confront witnesses directly in a criminal trial," Oliver, 278 F.3d at 1041, it is well settled that "the right to cross-examine witnesses isn't absolute," Mullins, 613 F.3d at 1283. Indeed, as the Supreme Court long ago recognized, "the Confrontation Clause guarantees

---

2 Indeed, despite conceding that he never explicitly raised the constitutional issue below, it was not until his reply brief that Veater even suggested that the alleged Confrontation Clause violation was plainly erroneous. While it is an open question in this circuit whether a defendant forfeits his right to assert a claim that is subject to plain error review when, like here, he does not argue under the plain error standard until his reply brief, see United States v. MacKay, 715 F.3d 807, 831-832 & n.17 (10th Cir. 2003), we need not resolve that question here because, even if properly preserved, Veater's Confrontation Clause argument is plainly meritless. Cf. B-S Steel of Kansas, Inc. v. Texas Industries, Inc., 439 F.3d 653, 660-61 (10th Cir. 2006) ("[T]his court favors deciding cases on the merits as opposed to dismissing them because of minor technical defects." (internal quotation marks omitted)).

10

an <u>opportunity</u> for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." Delaware v. Fensterer, 474 U.S. 15, 20 (1985) (per curiam). This means "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." Van Arsdall, 475 U.S. at 679; accord Oliver, 278 F.3d at 1041 ("The Confrontation Clause does not require the admission of potentially inflammatory and irrelevant testimony when a defendant has other avenues to attack a witness's credibility."). Here, having previously allowed Veater the opportunity to probe at length Doe's credibility, motives, and biases, the district court was well within that "wide latitude" in refusing to allow Veater to recall Doe to inquire about a matter that was not only irrelevant and repetitive, but also likely to confuse the jury. We thus find no Confrontation Clause violation.

### b. Bestiality testimony

Veater next argues that the district court committed plain error by allowing Doe to testify that she had seen bestiality on Veater's phone in the year preceding her discovery of the child pornography at issue in this case. Again, we disagree. In order to buttress the theory that Doe had set Veater up, Veater's counsel sought to establish that Doe had not

11

seen any incriminating images on Veater's phone until after the couple's fight over the

custody of their daughter.   During cross-examination, Veater's counsel thus asked Doe,

> Q:   And so in the year preceding the time that you just talked about with the prosecutor here, nothing unusual at all came up on those phones, right?
>
> A:   <u>Yes, there was</u>.
>
> Q:   No photographs?
>
> A:   Not of kids, no.
>
> Q:   Okay.   Nude children photographs, not one of the pictures that you've been shown here today was on there, right?
>
> A:   Not that I found, no.

R. Supp. Vol. 2 at 77 (emphasis added).   Veater's counsel then moved on, without

allowing Doe to explain what she had found on Veater's phone that <u>was</u> "unusual."   Not

surprisingly, therefore, the prosecutor followed up on the matter on redirect and asked Doe,

> Q:   [D]uring this period of time prior to the discovery of the photographs that were presented in Government Exhibits 1, 2, and 3, the defense attorney asked you that there were never any other photographs that were discovered on the cell phone; is that correct?
>
> A:   That I found, no.
>
> Q:   Okay.
>
> A:   Just the three.
>
> Q:   But you are aware of other photographs that were on his phone; is that right?
>
> A:   Yeah.

12

Q: And what were those?

A: Of a young girl's genital area.

Q: What about any other types of pornography?

A: There was—there's been bestiality that I've found.

Q: And what is bestiality, as your understanding?

A: Animals and humans.

Q: Doing what?

A: Intercourse, any kind of sexual activity.

Id. at 98-99. Although Veater did not object to this line of questioning at any time below, he now contends that the district court plainly erred in admitting Doe's redirect testimony because, according to Veater, it should have been excluded as "plainly irrelevant" and "inherently prejudicial" propensity evidence. Reply Br. at 17. Notwithstanding Veater's protestations to the contrary, the district court did not err, let alone plainly err, in admitting Doe's redirect testimony.

As an initial matter, we disagree with Veater that the fact that Doe had seen images depicting bestiality on his phone was "plainly irrelevant." Although that may or may not be true under other circumstances, what Veater fails to appreciate is that he made the matter relevant here when his counsel, perhaps inartfully, asked Doe whether she had seen anything "unusual" on Veater's phone in the year preceding her discovery of the child pornography. Indeed, as this court has repeatedly recognized, "[w]hen a party opens the

13

door to a topic, the admission of rebuttal evidence on that topic becomes permissible."

Tanberg v. Sholtis, 401 F.3d 1151, 1166 (10th Cir. 2005) (citing United States v. Burch, 153 F.3d 1140, 1144 (10th Cir. 1998)). While permissible surely does not mean mandatory, it is equally well-established that the admission of rebuttal testimony is subject to the broad discretion of the trial court. Id. And here, there is no doubting that Doe's assertion that she had seen bestiality on Veater's phone qualified as rebuttal evidence, which is simply "[e]vidence given to explain, repel, counteract, or disprove facts given in evidence by the opposing party," Black's Law Dictionary 1267 (6th ed. 1990). Among other things, the redirect testimony was necessary both to "explain" what images Doe had seen that were "unusual" and to "repel" Veater's implicit suggestion that nothing unusual was ever found on his phone. In short, having made the strategic decision to raise the issue of what, if any, images Doe had seen on his phone in the year leading up to her discovery of the child pornography, Veater will not now be heard to complain simply because he does not like, and perhaps did not anticipate, Doe's response to the inquiry. See Whiteley v. OKC Corp., 719 F.2d 1051, 1055 (10th Cir. 1983) ("We refuse to reverse a lower court decision on appeal when the appellant complains of possible error which he himself induced"); United States v. Brooks, 736 F.3d 921, 933 (10th Cir. 2013) ("[I]t is clear the district court did not abuse its discretion in allowing the government's questioning to rebut testimony [defendant's] counsel had elicited on cross-examination.").

   c. **Prosecutorial misconduct**

14

Veater's final claim alleges the prosecutor committed plain error by improperly vouching for the victim's credibility in her closing statements to the jury. This claim, too, is meritless. "An argument is only improper vouching if the jury could reasonably believe that the prosecutor is indicating a personal belief in the witness' credibility, either through explicit personal assurance of the witness' veracity or by implicitly indicating that information not presented to the jury supports the witness' testimony." United States v. Franklin-El, 555 F.3d 1115, 1125 (10th Cir. 2009) (internal quotation marks omitted). Although Veater contends both types of improper vouching occurred here, the record belies that suggestion.

While the prosecutor did use the personal pronoun "I" twice during her closing statements, see R. Supp. Vol. 3 at 220; id. at 254, this court has made clear "that the use of personal pronouns in closing argument is not a per se due process violation," United States v. Jones, 468 F.3d 704, 708 (10th Cir. 2006), and a review of the prosecutor's statements makes clear that her reverting to the first person was a mere mannerism and not an attempt to express a personal opinion about the victim's veracity. See id. ("The key issue is not the form but the content of such statements."); Fleming, 667 F.3d at 1105 ("[W]hen evaluating whether a statement is improper, we must view the statement in context."). For instance, when the prosecutor said, "Ladies and gentlemen, I will tell you why we saw [the victim] testify and why she told you the truth. She's been consistent," R. Supp. Vol. 3 at 220, context makes clear that she was intending to say something like "Ladies and

15

gentlemen, you should believe the victim because she's been consistent"—and not, "Ladies and gentlemen, you should believe the victim because I believe the victim." This does not rise to the level of prosecutorial misconduct. See Jones, 468 F.3d at 708; United States v. Lettig, 209 F. App'x 832, 841 (10th Cir. 2006) (unpublished); cf. Donnelly v. DeChristoforo, 416 U.S. 637, 646-47 (1974) ("Such arguments, like all closing arguments of counsel, are seldom carefully constructed in toto before the event; improvisation frequently results in syntax left imperfect and meaning less than crystal clear.").

Nor did the prosecutor's statement that the victim had been consistent "through interviews" constitute prosecutorial misconduct. See R. Supp. Vol. 3 at 220. Veater asserts otherwise, arguing that the statement amounted to an implicit indication that information not presented to the jury supported the victim's testimony. The problem for Veater, however, is that the jury was informed that the victim had spoken with various parties about Veater taking pictures of her. Indeed, as the government points out, Veater's own cross-examination of the victim elicited testimony that she had told her mother, her aunt, a child abuse investigator, an FBI agent, and the prosecutor that, although Veater had taken pictures of her, he had never touched her inappropriately. While it may have been a misnomer to characterize all of those conversations as "interviews," the fact remains that "the prosecutor never indicated to the jury that he knew something more about the witness's credibility than could be deduced from the evidence at trial," Thornburg v. Mullin, 422 F.3d 1113, 1132 (10th Cir. 2005). In short, because "it is not improper for a

16

prosecutor to direct the jury's attention to evidence that tends to enhance or diminish a witness's credibility," id., the prosecutor did not improperly vouch for the victim's credibility by reminding the jury that the victim had consistently maintained that Veater took pornographic pictures of her.

Although the foregoing makes clear that the prosecutor's statements were not plainly erroneous, we also take comfort in the fact that, immediately prior to closing arguments, the jury was instructed that "[s]tatements and arguments of counsel are not evidence in this case," R. Supp. Vol. 3 at 188, and that "[y]ou, as jurors, are the sole judges of the credibility of the witnesses and the weight their testimony deserves," id. at 189.  As we have recognized in the past, such instructions obviate any suggestion that the prosecutor's statements prejudiced Veater because "[w]e presume the jury follows its instructions."  United States v. Rogers, 556 F.3d 1130, 1141 (10th Cir. 2009); see also Fleming, 667 F.3d at 1106; United States v. Lopez, 596 F.3d 716, 740 (10th Cir. 2010).

III.    CONCLUSION

For the reasons discussed above, we hold that the district court did not err, let alone plainly err, in rejecting Veater's request to recall Doe for additional cross-examination, in permitting Doe to testify that she had seen bestiality on Veater's phone, or in allowing the prosecutor to make the closing arguments that she did.   Because Veater has failed to establish the existence of any errors, we need not consider his additional argument that he

17

is entitled to relief under this court's cumulative error doctrine.   See Oliver, 278 F.3d at 1043.   Finding no errors below, we AFFIRM Veater's convictions in all respects.



ENTERED FOR THE COURT


David M. Ebel
Circuit Judge