******************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the latest version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.
******************************************

STATE OF CONNECTICUT *v.* MARCUS H.*
(AC 39379)
(AC 40796)

Prescott, Bright and Norcott, Js.

*Syllabus*

Convicted, after a jury trial, of the crimes of assault in the second degree
with a motor vehicle, risk of injury to a child, reckless endangerment
in the first degree, reckless driving, operating a motor vehicle while
under the influence of intoxicating liquor, interfering with an officer
and increasing speed in an attempt to escape or elude a police officer,
the defendant appealed to this court. During jury selection, the defendant
moved for a continuance to replace his private attorney, W, with another
private attorney. The trial court denied the motion, and the defendant
requested to represent himself. After concluding that the defendant
knowingly and voluntarily had waived his right to counsel, the court
granted his request and appointed W as the defendant's standby counsel.
The defendant thereafter filed an application for a public defender, but
the public defender's office concluded that he was not eligible for its
services. Following a hearing, the trial court denied the defendant's
application for a public defender, implicitly finding that the defendant
was not indigent and, thus, that he was not entitled to a public defender.
The defendant thereafter proceeded with the trial self-represented. After
several days of trial, the state asked the court to raise the defendant's
bond because he had failed to appear for trial on a previous day. The
court raised the defendant's bond, and when he was unable to post it,
the defendant was taken into custody by the judicial marshals and was
placed in leg shackles. After a recess, the defendant did not request
that the court order that his shackles be removed for the trial and, when
the trial resumed, he was seated in a manner in which his shackles were
not visible to the jury. The jury, however, briefly could see that he was
wearing shackles on his ankles when he stood up to approach a witness.
The jury was then immediately excused at the prosecutor's request,
and the court ordered the judicial marshals to remove the defendant's
shackles. After the jury returned, it was instructed by the court not to
consider the shackles in its deliberations. On the defendant's appeal to
this court, *held*:

1. The defendant could not prevail on his claim that the trial court violated
his constitutional right to counsel and, therefore, to due process, by
denying his application for the appointment of a public defender; that
court's implicit finding that the defendant was not indigent was not
clearly erroneous and was supported by the evidence in the record,
which indicated that the defendant had the financial ability at the time
of his request for a public defender to secure competent legal representa-
tion, as he had obtained a private attorney, W, who was ready, willing
and able to continue to represent him throughout the trial, and the
trial court, therefore, properly denied the defendant's request for the
appointment of a public defender.

2. The defendant's unpreserved claim that the trial court violated his constitu-
tional right to due process by failing to order, sua sponte, a judicial
marshal to remove his shackles during the trial was unavailing, the
defendant having failed to demonstrate the existence of a constitutional
violation that deprived him of a fair trial: the defendant did not have a
constitutional right that obligated the trial court to inquire as to whether
he was shackled and to order, sua sponte, that his shackles be removed,
as the defendant's failure to object to being tried before the jury in
shackles was sufficient to negate the compulsion necessary to establish
a constitutional violation, and his request for the judicial marshals to
remove his shackles was inadequate to alert the court that he wanted
them to be removed; moreover, the defendant was not compelled to
stand trial before the jury while visibly shackled, as he had the option
to remain seated and to request that a marshal bring the court, or any
witnesses, his documents, but, instead, he asked permission to approach
the witness, voluntarily exposing his shackles to the jury, even though

he obviously was aware that he was shackled and that the jury would be able to observe the shackles, and this court was not persuaded that the jury's brief exposure to the defendant in leg shackles, together with the trial court's curative instruction, denied the defendant of a fair trial; furthermore, the defendant's reliance on the rule of practice (§ 42-46) that requires the judicial authority to employ reasonable efforts to conceal such restraints from the view of the jurors was unavailing, as the rules of practice are not a source of constitutional rights for which the failure to follow establishes a constitutional violation.

Argued January 14—officially released June 4, 2019

*Procedural History*

Two part substitute information charging the defendant, in the first part, with two counts each of the crimes of risk of injury to a child and reckless endangerment in the first degree, and with the crimes of assault in the second degree with a motor vehicle, reckless driving, operating a motor vehicle while under the influence of intoxicating liquor or drugs, operating a motor vehicle with an elevated blood alcohol content, interfering with an officer and increasing speed in an attempt to escape or elude a police officer, and, in the second part, with previously having been convicted of operating a motor vehicle while under the influence of intoxicating liquor or drugs, brought to the Superior Court in the judicial district of New London, geographical area number ten, where the court, *Jongbloed, J.*, denied the defendant's application for the appointment of a public defender; thereafter, the first part of the information was tried to the jury; verdict and judgment of guilty; subsequently, the defendant was presented to the court on a plea of guilty to the second part of the information; thereafter, the court vacated the conviction of operating a motor vehicle with an elevated blood alcohol content, and the defendant appealed to this court; subsequently, the court, *Jongbloed, J.*, issued an articulation of its decision. *Appeal dismissed in AC 39379*; *affirmed.*

*Lisa J. Steele*, assigned counsel, for the appellant (defendant).

*Jennifer F. Miller*, assistant state's attorney, with whom, on the brief, were, *Michael L. Regan*, state's attorney, and *Sarah Bowman*, assistant state's attorney, for the appellee (state).

*Opinion*

PRESCOTT, J. The defendant, Marcus H., appeals from the judgment of conviction, rendered after a jury trial, of assault in the second degree with a motor vehicle in violation of General Statutes § 53a-60d, two counts of risk of injury to a child in violation of General Statutes § 53-21 (a) (1), two counts of reckless endangerment in the first degree in violation of General Statutes § 53a-63, reckless driving in violation of General Statutes § 14-222, operating a motor vehicle while under the influence of intoxicating liquor in violation of General Statutes § 14-227a (a) (1), operating a motor vehicle with an elevated blood alcohol content in violation of General Statutes § 14-227a (a) (2),[1] interfering with an officer in violation of General Statutes § 53a-167a, and increasing speed in an attempt to escape or elude a police officer in violation of General Statutes § 14-223 (b). The defendant claims on appeal that the court improperly (1) violated his constitutional right to counsel by denying his application for the appointment of a public defender and (2) violated his constitutional right to due process when it did not order, sua sponte, a judicial marshal to remove his leg shackles during the trial.[2] We are not persuaded by the defendant's claims and, accordingly, affirm the judgment of conviction.[3]

The jury reasonably could have found the following facts. In the early morning of May 25, 2014, a motorist driving behind the defendant observed that his car remained stopped through two cycles of a stoplight. The motorist pulled over, exited her car, and approached the passenger side of the defendant's car. She observed the defendant sleeping or unconscious in the driver seat and two young girls in car seats in the back of the car. The motorist woke up the defendant, who then drove off.

Due to concern for the children's safety, the motorist called the police and informed them that she thought that the defendant was intoxicated. On the basis of the information provided by the motorist, the police station issued a "be on the lookout" report over their radio system for a black Acura with a black male operator and two females in the back seat. Officer Jason Pudvah saw a car that matched the description from the report idling at a nearby gas station. Pudvah approached the car and observed the defendant slumped over in the driver's seat and his two and four year old daughters in the backseat. Pudvah knocked on the window and spoke with the defendant. After requesting the defendant's information, Pudvah returned to his vehicle. While Pudvah was speaking with police dispatch, the defendant drove off at a high rate of speed.

Pudvah initially pursued the defendant but stopped due to fear for the children's safety and in the hope

that the defendant would slow down. Further down the road, the defendant lost control of his car and crashed into a telephone pole. The car became airborne and landed upside down in a residential swimming pool. As a result of the accident, the defendant's younger daughter suffered serious injuries to her arm and his older daughter sustained an ankle injury.

After the trial, during which the defendant represented himself, a jury found the defendant guilty of all charges, and the court rendered judgment in accordance with the verdict. Thereafter, the defendant pleaded guilty to being a subsequent offender to operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (g) (2). The trial court, *Jongbloed, J.*, sentenced the defendant to a total effective term of twenty-three years of incarceration, execution suspended after fourteen and one-half years, followed by five years of probation with special conditions. This appeal followed. Additional facts will be set forth as necessary.

## I

The defendant claims that the trial court violated his constitutional right to counsel and, therefore, to due process, by denying his application for the appointment of a public defender. We disagree.

The following additional facts are relevant to this claim. On the first day of jury selection on February 18, 2016,[4] the defendant requested a continuance to replace his private attorney, Attorney John Williams, with another private attorney. Specifically, he claimed that he had a dispute with Attorney Williams regarding payment of attorney's fees, and he did not believe that Attorney Williams would represent him properly. Attorney Williams informed the court that he had "told [the defendant] expressly and more than once that under no circumstances would his [lack of payment] in any way, shape, or form affect [his] commitment to [the defendant]." The court denied the motion for a continuance and stated that "[Attorney] Williams is going to honor his professional obligations under all circumstances and represent [the defendant] to the best of his ability."

After the court denied the motion for a continuance, the defendant requested to represent himself. The court canvassed the defendant regarding his decision to represent himself, including inquiring as to whether he understood the dangers of self-representation. After concluding that the defendant knowingly and voluntarily waived his right to counsel, the court granted his request. The court then appointed Attorney Williams as the defendant's standby counsel. Jury selection thereafter commenced, with the defendant representing himself. That afternoon, the defendant applied for a public defender.

The next day, the court held a hearing on the defendant's request for appointment of a public defender. The assistant state's attorney, the defendant, Attorney Williams, and Attorney Sean Kelly from the public defender's office were present at the hearing. Attorney Kelly stated that, after reviewing the defendant's application, the defendant was not eligible for their services and that the Office of the Public Defender did not seek to be appointed in the case.

The defendant argued that he was financially eligible for the services of a public defender. Specifically, he argued that, although he was able to post bonds and had retained private counsel in the past, his financial situation had changed so that he had "the right to free counsel . . . on the state's dollar." Attorney Kelly stated that the public defender's office considers many factors when making a decision regarding a defendant's eligibility, including whether the defendant is receiving support from others. After evaluating the defendant's application, the public defender's office concluded that his circumstances did not warrant appointment of a public defender.

The defendant initially posted a $25,000 surety bond. His bond subsequently was increased to a $75,000 surety bond, which he also posted. Therefore, the defendant was not in custody and was living with his mother at the time he applied for a public defender. Attorney Kelly noted that the defendant's ability to post bond and to obtain private counsel "shows a pattern where, if there's money needed, money comes . . . ." The defendant himself stated that the money from his initial payment to Attorney Williams came from his mother. Attorney Kelly also noted that this was the second private attorney the defendant had retained in the case and that the defendant had posted significant bonds on two prior occasions. These facts taken together led the public defender's office to conclude that the defendant was not indigent.

The defendant responded to Attorney Kelly by stating that he still owed money to both of his private attorneys and had balances on both bonds. Finally, he restated that he believed that Attorney Williams, who was present and available to represent him, would be ineffective. At the conclusion of the hearing, the trial court denied the defendant's request. In denying the defendant's request, the court stated: "Under all the circumstances, [the public defender's office is] not seeking to be appointed. I am not going to appoint the public defender's office to represent you. We'll continue your appearance pro se with standby counsel by Attorney Williams."[5] The defendant continued to trial representing himself, with the assistance of Attorney Williams as standby counsel.

We begin with the relevant law and standard of review

that govern this claim. Practice Book § 37-6 (a) provides in relevant part: "If the judicial authority determines after investigation by the public defender that the defendant is indigent, the judicial authority may designate the public defender or a special public defender to represent the defendant . . . . If the public defender or his or her office determines that a defendant is not eligible to receive the services of a public defender, the defendant may appeal the public defender's decision to the judicial authority in accordance with General Statutes § 51-297 (g). The judicial authority may not appoint the public defender unless the judicial authority finds the defendant indigent following such appeal. . . ."

Our Supreme Court in *State* v. *Henderson*, 307 Conn. 533, 540–41, 55 A.3d 291 (2012), stated: "[T]he trial court's assessment of the defendant's offer of proof pertaining to whether he was indigent and was, therefore, eligible for state funded . . . assistance, is a factual determination subject to a clearly erroneous standard of review. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. . . .

"It is the duty of the state to provide adequate means to assure that no indigent [defendant] accused lacks full opportunity for his defense . . . . The right to legal and financial assistance at state expense is, however, not unlimited. Defendants seeking such assistance must satisfy the court as to their indigency . . . . This has largely been accomplished through [public defender services] . . . which has promulgated guidelines that are instructive as to the threshold indigency determination. . . .

"[General Statutes §] 51-297 (a) requires the public defender's office to investigate the financial status of an individual requesting representation on the basis of indigency, whereby the individual must, under oath or affirmation, set forth his liabilities, assets, income and sources thereof. . . . [General Statutes §] 51-296 (a) requires that, [i]n any criminal action . . . the court before which the matter is pending shall, if it determines after investigation by the public defender or his office that a defendant is indigent as defined under this chapter, designate a public defender . . . to represent such indigent defendant . . . ." (Internal quotation marks omitted.)

Section 51-297 (f) provides in relevant part: "As used in this chapter, 'indigent defendant' means . . . a person who is formally charged with the commission of a crime punishable by imprisonment and who does not have the financial ability at the time of his request for representation to secure competent legal representa-

tion and to provide other necessary expenses of legal representation . . . ."

Here, there is evidence in the record to support the court's implicit finding that the defendant was not indigent and, thus, not entitled to the appointment of a public defender. The most probative evidence in the record that the defendant had the financial ability at the time of his request for a public defender to secure competent legal representation was that he, in fact, had obtained a private attorney who was ready, willing, and able to continue to represent him throughout the trial. On this fact alone, we conclude that the trial court's finding that the defendant was not indigent is not clearly erroneous, and, thus, this claim warrants no further discussion.[6] Accordingly, we conclude that the court properly denied the defendant's application for the appointment of a public defender.[7]

## II

The defendant next claims that the trial court violated his constitutional right to due process by failing to order, sua sponte, a judicial marshal to remove his shackles during the trial. The defendant states that this aspect of his claim does not implicate the court's denial of his motion for a mistrial.[8] Instead, he invites this court to focus on whether the trial court violated his right to due process by failing to order, sua sponte, that his shackles be removed. Although this claim is not preserved because it was not raised to the trial court, we nevertheless review it under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A. 2d 823 (1989), as modified by *In re Yasiel R*, 317 Conn. 773, 781, 120 A.3d 1188 (2015).[9] We conclude that the trial court, under the circumstances of this case, did not violate the defendant's due process rights by failing to order, sua sponte, that his shackles be removed. Therefore, the defendant's claim fails under the third prong of *Golding*, which requires that he demonstrate that "the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial . . . ."[10] Id., 240.

The following additional facts are relevant to this claim. On Monday, February 29, 2016, after several days of trial, the state asked the court to raise the defendant's bond because he had failed to appear for trial on the previous Friday. After argument, the court raised the defendant's bond to require that he post an additional $50,000 in cash. The defendant was unable to post the increased bond, and he, therefore, was taken into custody by the judicial marshals. The court took a recess, during which the marshals shackled the defendant.

The record is unclear whether the court knew, at the time that it returned from the recess, that the defendant was wearing leg shackles. Nevertheless, after the recess, the defendant did not request that the court order that his shackles be removed. The defendant did

object, however, to going forward with the trial because he was not feeling well. The court proceeded with the trial but granted the defendant permission to remain seated in order to accommodate any illness.

The trial resumed, and the defendant was seated in a manner in which his leg shackles were not visible to the jury.[11] At some point, however, the defendant requested permission to approach a witness. After being granted permission, the defendant stood up and started to approach the witness, at which time, the jury briefly could see that the defendant was wearing shackles on his ankles. At the request of the prosecutor, the jury immediately was excused. Once the jury was excused, the prosecutor requested that the defendant's shackles be removed. At this time, the court ordered the judicial marshals to remove the defendant's shackles. The defendant immediately moved for a mistrial. In opposition to the motion, the prosecutor argued that the defendant knew that the shackles would be visible to the jury when he stood up and that he could have brought the issue to the court's attention.

The court denied the defendant's motion for a mistrial. In denying the motion, the court stated that the defendant failed to request that the court order that his shackles be removed. The court also stated that it would give a limiting instruction regarding the shackles to the jury upon the defendant's request. The defendant then requested a limiting instruction regarding the shackles, which the court granted. After the jury returned, it was instructed not to consider the shackles in its deliberations.[12] The following day, the defendant renewed his motion for a mistrial. The prosecutor argued that a mistrial was not warranted because the jury's exposure to the shackles was brief and the court's response to the situation was immediate. Further, the prosecutor stated that the limiting instruction was an appropriate remedy. The court, again, denied the defendant's motion.

We begin with a discussion of the law applicable to the defendant's claim. "Central to the right to a fair trial, guaranteed by the Sixth and Fourteenth Amendments, is the principle that one accused of a crime is entitled to have his guilt or innocence determined solely on the basis of the evidence introduced at trial, and not on grounds of official suspicion, indictment, continued custody, or other circumstances not adduced as proof at trial. . . . This does not mean, however, that every practice tending to single out the accused from everyone else in the courtroom must be struck down." (Citation omitted; internal quotation marks omitted.) *Holbrook* v. *Flynn*, 475 U.S. 560, 567, 106 S. Ct. 1340, 89 L. Ed. 2d 525 (1986).

"As a general proposition, a criminal defendant has the right to appear in court free from physical restraints. . . . Grounded in the common law, this right evolved

in order to preserve the presumption favoring a criminal defendant's innocence, while eliminating any detrimental effects to the defendant that could result if he were physically restrained in the courtroom. . . . The right to a fair trial is a fundamental liberty secured by the Fourteenth Amendment. . . . The presumption of innocence, although not articulated in the Constitution, is a basic component of a fair trial under our system of criminal justice. . . . In order to implement that presumption, courts must be alert to factors that may undermine the fairness of the factfinding process. In the administration of criminal justice, courts must carefully guard against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. . . . Put another way, for the presumption to be effective, courts must guard against practices which unnecessarily mark the defendant as a dangerous character or suggest that his guilt is a foregone conclusion." (Citations omitted; internal quotation marks omitted.) *State* v. *Woolcock*, 201 Conn. 605, 612–13, 518 A.2d 1377 (1986).

"In order for a criminal defendant to enjoy the maximum benefit of the presumption of innocence, our courts should make every reasonable effort to present the defendant before the jury in a manner that does not suggest, expressly or impliedly, that he or she is a dangerous character whose guilt is a foregone conclusion. . . . The negative connotations of restraints, nevertheless, are without significance unless the fact of the restraints comes to the attention of the jury." (Internal quotation marks omitted.) *State* v. *Brawley*, 321 Conn. 583, 588, 137 A.3d 757 (2016).

In *Deck* v. *Missouri*, 544 U.S. 622, 626, 125 S. Ct. 2007, 161 L. Ed. 2d 953 (2005), the United States Supreme Court stated that "[t]he law has long forbidden routine use of *visible* shackles during the guilt phase [of a criminal trial] . . . ." (Emphasis added.) The court further noted that "[c]ourts and commentators share close to a consensus that, during the guilt phase of a trial, a criminal defendant has a right to remain free of physical restraints *that are visible to the jury*; that the right has a constitutional dimension; but that the right may be overcome in a particular instance by essential state interests such as physical security, escape prevention, or courtroom decorum." (Emphasis added.) Id., 628. Furthermore, the court held that "the Fifth and Fourteenth Amendments prohibit the use of physical restraints *visible to the jury* absent a trial court determination, in the exercise of its discretion, that they are justified by a state interest specific to a particular trial." (Emphasis added.) Id., 629.

Turning to the defendant's claim, he argues that, because the court knew that he was taken into custody on the morning of February 29, 2016, it should have determined whether he was shackled in the courtroom

and then ordered that the shackles be removed before the jury entered. The defendant's claim that he had a constitutional right obligating the trial court to inquire, sua sponte, whether he was shackled is misplaced in light of well established law.[13] Whether the defendant was or was not shackled, however, is not the critical question. Instead the critical question for purposes of the defendant's constitutional claim is whether the defendant was unnecessarily compelled to stand trial before a jury while *visibly* shackled.

This case is analogous to *Estelle* v. *Williams*, 425 U.S. 501, 502, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976), in which the respondent claimed that his right to due process was violated because he was tried before a jury while wearing prison attire. Prison attire implicates the same due process concerns as shackles, as they both may have an erosive effect on the defendant's presumption of innocence. See *State* v. *Rose*, 305 Conn. 594, 622, 46 A.3d 139 (2012) (*Zarella, J.*, dissenting) ("A juror might associate prison attire with an increased likelihood that the defendant had committed the crime. In that sense, the harm is similar to that caused by requiring a defendant to remain visibly shackled . . . .").

In *Estelle*, the record was "clear that no objection was made to the trial judge concerning the jail attire either before or . . . during the trial." *Estelle* v. *Williams*, supra, 425 U.S. 509–10. The court noted that the respondent had raised this issue with the jail attendant prior to trial, but not to the trial judge. Id., 510. The court held that "although the State cannot, consistently with the Fourteenth Amendment, *compel* an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." (Emphasis added.) Id., 512–13. Further, the court in *Estelle* held that the trial court was not obligated to inquire of the respondent or his counsel regarding whether he was deliberately choosing to be tried while wearing prison attire. Id., 512. Therefore, the court found no constitutional violation and reversed the judgment that had set aside the respondent's conviction. Id. The court in *Estelle* noted that "the courts have refused to embrace a mechanical rule vitiating any conviction, regardless of the circumstances, where the accused appeared before the jury in prison garb. Instead, they have recognized that the particular evil proscribed is compelling a defendant, against his will, to be tried in jail attire." Id., 507.

In the present case, the defendant never requested that the court order the judicial marshals to remove his shackles. Therefore, as in *Estelle*, the defendant's constitutional right to due process was not violated because the defendant's failure to make an objection

to the court was sufficient to negate the compulsion necessary to establish a constitutional violation. The present case is readily distinguishable from those relied on by the defendant in which the respective courts affirmatively ordered, or refused to remove after objection, restraints or prison attire.[14]

The defendant definitively knew that he was shackled, yet, he did not request that the court order that the judicial marshals remove his shackles. The defendant argues that he asked the judicial marshals to remove his shackles. That request, however, was inadequate to alert the court that he wished to have his shackles removed.[15] Once the trial resumed after the defendant was taken into custody, he was seated in a manner in which his shackles were concealed. At this point, the defendant had the opportunity to request the court to order that his shackles be removed but failed to do so.

The defendant also had the option to remain seated and request that a marshal bring the court, or any witnesses, his documents. The defendant had, in fact, utilized the judicial marshals to hand documents to the court earlier that day. Instead, the defendant asked permission to approach the witness, voluntarily exposing his shackles to the jury. When the defendant approached the witness, he obviously was aware that he was shackled and that the jury would be able to observe the shackles.[16]

Additionally, the defendant has not provided any case law that stands for the proposition that a defendant's right to due process is violated if the jury is briefly exposed to facts that would lead it to believe that the defendant is in custody. In the present case, when the defendant revealed to the jury that he was shackled, the prosecutor immediately requested that the jury be excused. Once the jury was excused, the court ordered the judicial marshals to remove the defendant's shackles. Therefore, the shackles were visible to the jury for only a brief period of time. Upon the jury's return to the courtroom, the court gave a curative instruction regarding the shackles, the adequacy of which the defendant has not challenged.

Our conclusion that the jury's brief exposure to the defendant in shackles did not violate his constitutional rights is supported by authority from other jurisdictions. For example, in *Ghent* v. *Woodford*, 279 F.3d 1121, 1132 (9th Cir. 2002), a defendant claimed that his constitutional right to due process was violated because he was physically restrained by the state in the presence of the jury. Specifically, jurors saw the defendant in the hallway at the entrance to the courtroom in handcuffs and other restraints. Id., 1133. The reviewing court stated that "[t]he jury's 'brief or inadvertent glimpse' of a shackled defendant is not inherently or presumptively prejudicial, nor has [the defendant] made a sufficient showing of actual prejudice." Id.

Additionally, in *United States* v. *Jones*, 468 F.3d 704, 706 (10th Cir. 2006), a defendant claimed that his right to due process was violated because a juror briefly saw him in leg shackles during the afternoon break on the second day of trial. The court held that there was no due process violation and stated that, "[i]n itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial." Id., 709.

We agree with the courts in *Ghent* and *Jones*, that a jury's brief or inadvertent glimpse of a shackled defendant is not inherently or presumptively unconstitutional. Unlike cases in which the defendant was ordered to remain shackled throughout the entirety of the trial, here, the exposure lasted for only a brief period of time. We are not convinced that the brief exposure to the jury of the defendant with shackles on his ankles, paired with a curative instruction, denied the defendant of a fair trial.

Finally, we are not persuaded by the defendant's reliance on Practice Book § 42-46,[17] which provides that reasonable efforts shall be employed to conceal such restraints from the view of the jurors. See footnote 17 of this opinion. The rules of practice, however, are not a source of constitutional rights, for which the failure to follow establishes a constitutional violation. See General Statutes § 51-14 (a) (noting that rules of practice and procedure "shall not abridge, enlarge or modify any substantive right").

In conclusion, we are not persuaded that the defendant had a constitutional right obligating the court to order, sua sponte, that his shackles be removed. Furthermore, we are not convinced that the defendant was compelled to stand trial before a jury while visibly shackled. Accordingly, the defendant has not demonstrated that a constitutional violation exists and that he was deprived of a fair trial.

The judgment in AC 40796 is affirmed; the appeal in AC 39379 is dismissed.

In this opinion the other judges concurred.

* In accordance with our policy of protecting the privacy interests of the victims of the crime of risk of injury to a child, we decline to identify the victims or others through whom the victims' identities may be ascertained. See General Statutes § 54-86e.

[1] The court vacated the conviction of operating a motor vehicle with an elevated blood alcohol content in violation of § 14-227a (a) (2), and sentenced the defendant on the conviction of operating a motor vehicle while under the influence of intoxicating liquor in violation of § 14-227a (a) (1). See *State* v. *Lopez*, 177 Conn. App. 651, 668–69, 173 A.3d 485 (2017) ("[t]he legislative history reflects that the two subdivisions of § 14-227a (a) describe alternative means for committing the same offense of illegally operating a motor vehicle while under the influence of intoxicating liquor or drugs"), cert. denied, 327 Conn. 989, 175 A.3d 563 (2017).

[2] The petitioner appears to predicate his claims on the fifth, sixth, and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. Because he has not provided an independent analysis of his state constitutional claims under *State* v. *Geisler*, 222 Conn.

672, 684–86, 610 A.2d 1225 (1992), we deem them abandoned. See, e.g., *Barros* v. *Barros*, 309 Conn. 499, 507 n.9, 72 A.3d 367 (2013) ("we will not entertain a state constitutional claim unless the defendant has provided an independent analysis under the particular provisions of the state constitution at issue" [internal quotation marks omitted]). Accordingly, we analyze the defendant's claims under the federal constitution only.

[3] The defendant filed AC 39379 before the imposition of his sentence. Practice Book § 61-6 (a) (1) provides in relevant part: "The defendant [in a criminal case] may appeal from a conviction for an offense when the conviction has become a final judgment. The conviction becomes a final judgment after the imposition of sentence. . . ." See also *State* v. *Fielding*, 296 Conn. 26, 36, 994 A.2d 96 (2010) ("[i]n a criminal proceeding, there is no final judgment until the imposition of a sentence" [internal quotation marks omitted]). Accordingly, we dismiss the appeal in AC 39379 for lack of a final judgment. In any event, all of the issues that were raised in AC 39379 are addressed in this opinion.

[4] Jury selection originally occurred on October 14 and 15, 2015. On November 16, 2015, however, the court granted a motion for a competency evaluation of the defendant. On the basis of the evaluation, the court found that the defendant was competent to stand trial. Due to the evaluation, the trial was postponed and a second jury selection occurred on February 18, 19, and 22, 2016.

[5] Although the court did not explain why it concluded that the defendant was not entitled to a public defender, it appears that, on the basis of the arguments presented to it, it implicitly found that the defendant was not indigent.

[6] Because we conclude that the trial court's finding that the defendant had the requisite ability to obtain private counsel was not clearly erroneous on the basis of the fact he previously had done so, we need not reach the defendant's assertion that the public defender's office should not have considered the resources of the defendant's family in determining that he was ineligible for the services of a public defender.

[7] Even if the defendant had established his indigency, the court would not have been obligated to replace Attorney Williams with a public defender. See *Sekou* v. *Warden*, 216 Conn. 678, 686, 583 A.2d 1277 (1990) (criminal defendant's right to counsel of choice does not grant defendant an unlimited opportunity to obtain alternative counsel on eve of trial). Under the circumstances of this case, the defendant's sixth amendment right to counsel could not have been violated when competent counsel, Attorney Williams, appeared with the defendant for trial and was fully prepared to represent the defendant through the conclusion of the trial. Furthermore, the defendant's application for a public defender was not filed in order to secure any particular attorney of the defendant's choosing but merely sought to get someone other than Attorney Williams. A defendant's dissatisfaction with counsel on the eve of trial or a disagreement over trial strategy does not entitle a defendant to the appointment of new counsel. *State* v. *Morico*, 14 Conn. App. 144–45, 539 A.2d 1033, cert. denied, 208 Conn. 812, 546 A.2d 281 (1988). Whether to allow a defendant to replace counsel in such circumstances is left to the sound discretion of the trial court. Id.

[8] The defendant notes in his appellate brief, however, that if we were to disagree with his due process claim, then "[we] would reach the issue of whether a mistrial should have been granted once the shackles became obvious." This sentence is the only mention within the defendant's main brief of this claim regarding the propriety of the court's denial of his motion for a mistrial. He makes no mention of it in his reply brief. Moreover, this claim is not accompanied by any supporting arguments or citations to relevant authority. Therefore, this claim is inadequately briefed by the defendant, and we decline to review it. See *In re Elijah C.*, 326 Conn. 480, 495, 165 A.3d 1149 (2017) ("Ordinarily, [c]laims are inadequately briefed when they are merely mentioned and not briefed beyond a bare assertion. . . . Claims are also inadequately briefed when they . . . consist of conclusory assertions . . . with no mention of relevant authority and minimal or no citations from the record . . . ." [Internal quotation marks omitted.]); see also *Connecticut Light & Power Co.* v. *Dept. of Public Utility Control*, 266 Conn. 108, 120, 830 A.2d 1121 (2003) (appellate courts "are not required to review issues that have been improperly presented . . . through an inadequate brief" [internal quotation marks omitted]).

[9] The defendant argues that his due process claim is preserved by his motion for a mistrial, or alternatively, that it is reviewable pursuant to *State* v. *Golding*, supra, 213 Conn. 233. We disagree that his due process claim

as framed on appeal was preserved by his motion for a mistrial because he never claimed in his motion that the court had an obligation to order, sua sponte, that his shackles be removed. Nevertheless, because his claim is arguably of constitutional magnitude, we review it pursuant to *Golding*. Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail. The appellate tribunal is free . . . to respond to the defendant's [*Golding*] claim by focusing on whichever condition is most relevant in the particular circumstances." (Emphasis in original; footnote omitted.) Id., 239–40.

[10] Because we review the defendant's claim under *Golding* we need not undergo plain error analysis. See *State* v. *Abraham*, 64 Conn. App. 384, 408, 780 A.2d 223 ("[b]ecause this claim is unpreserved, our review is limited to either plain error review; see Practice Book § 60-5; or review pursuant to the *Golding* doctrine"), cert. denied, 258 Conn. 917, 782 A.2d 1246 (2001). We also decline the defendant's invitation to exercise our supervisory authority over the administration of justice.

[11] Although the court did not make any specific factual finding regarding the visibility of the defendant's shackles while he remained seated, the defendant states in his brief that the shackles became visible only when he stood up and began to approach the witness.

[12] The court stated: "Ladies and gentlemen, I'm just going to give you a brief instruction. You may have noticed that the defendant did have on shackles as he walked out to show a document, to have a document marked for identification, and let me just indicate to you that I am instructing you that you're not to speculate as to any reasons for that and it's nothing that should factor into your deliberations and nothing that should be considered by you in any way."

[13] Although it may have been a "best practice" for the court to have inquired, sua sponte, whether the defendant in fact was shackled after he failed to post the increased bond, the defendant has not persuaded us that it was constitutionally *required* to make such an inquiry.

[14] See *State* v. *Brawley*, supra, 321 Conn. 583 (trial court ordered that defendant be shackled during trial); *State* v. *Rose*, supra, 305 Conn. 599 (trial court compelled defendant to stand trial in identifiable prison clothing and shackles); *State* v. *Shashaty*, 251 Conn. 768, 799, 742 A.2d 786 (trial court ordered that defendant remain in shackles during jury selection and trial), cert. denied, 529 U.S. 1094, 120 S. Ct. 1734, 146 L. Ed 2d 653 (1999); *State* v. *White*, 229 Conn. 125, 144–46, 640 A.2d 572 (1994) (trial court ordered that defendant be shackled during trial, "acquiescing" to sheriff's recommendation without analysis or justification); *State* v. *Williams*, 195 Conn. 1, 9–10, 485 A.2d 570 (1985) (trial court ruled that defendant remain in leg restraints during course of jury selection).

[15] The defendant argues that the trial court's inaction constituted "tacit acceptance" of the judicial marshal's actions and is the equivalent of an affirmative shackling order. See *State* v. *White*, 229 Conn. 125, 144–46, 640 A.2d 572 (1994). In *White*, our Supreme Court held that the trial court improperly had "acquiesced" in the judicial marshal's recommendation to shackle the defendants. Id., 146. In *White*, however, the defendants specifically requested that the court order their shackles removed, and the court denied their request. Id., 144. Further, the defendants renewed their objection to the court on several occasions and filed affidavits before and after the trial regarding their complaints. Id., 145–46. Therefore, *White* wholly is distinguishable from the present case. Additionally, in *Estelle* v. *Williams*, supra, 425 U.S. 510, the respondent made a request regarding his prison attire to a jail attendant, which was not sufficient to notify the court of his request.

[16] When the defendant was canvassed by the court regarding his decision to represent himself, he stated that he understood the dangers and disadvantages of self-representation. One such risk was his lack of understanding as to how to raise properly the question of whether the shackles should be removed so that they would not be visible to the jury when he approached a witness.

[17] Practice Book § 42-46 provides the court with a statutory framework

when making a determination to employ reasonable means of restraint on a defendant. Practice Book § 42-46 provides: "(a) Reasonable means of restraint may be employed if the judicial authority finds such restraint reasonably necessary to maintain order. If restraints appear potentially necessary and the circumstances permit, the judicial authority may conduct an evidentiary hearing outside the presence of the jury before ordering such restraints. The judicial authority may rely on information other than that formally admitted into evidence. Such information shall be placed on the record outside the presence of the jury and the defendant given the opportunity to respond to it.

"(b) In ordering the use of restraints or denying a request to remove them, the judicial authority shall detail its reasons on the record outside the presence of the jury. The nature and duration of the restraints employed shall be those reasonable necessary under the circumstances. All reasonable efforts shall be employed to conceal such restraints from the view of the jurors. Upon request, the judicial authority shall instruct the jurors that restraint is not to be considered in assessing the evidence or in the determination of the case."