******************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************

## JOSEPH WALKER *v.* COMMISSIONER OF CORRECTION
### (AC 46422)

Elgo, Cradle and Prescott, Js.

*Syllabus*

The petitioner, who had been convicted, after a jury trial, of murder and other crimes, appealed from the habeas court's judgment denying his petition for a writ of habeas corpus. He claimed that the court improperly concluded that he had failed to demonstrate that his criminal trial counsel provided ineffective assistance by failing to move for a mistrial after an exhibit was published to the jury indicating that the petitioner had been incarcerated near the time of his criminal trial, which he claimed vitiated his right to the presumption of innocence and constituted structural error. *Held*:

The petitioner failed to explain why the rule of *State* v. *Rose* (305 Conn. 594), that a conviction is reversible per se when a defendant is compelled to stand trial in identifiable prison clothing, should apply to his claim, nor did he provide any precedent requiring the application of structural error under the circumstances at issue.

The petitioner could not prevail on his ineffective assistance of counsel claim, as he failed to establish that he was prejudiced under *Strickland* v. *Washington* (466 U.S. 668) as a result of counsel's failure to move for a mistrial.

Argued September 9, 2024—officially released January 14, 2025

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *M. Murphy, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Robert L. O'Brien*, assigned counsel, with whom, on the brief, was *Christopher Y. Duby*, assigned counsel, for the appellant (petitioner).

*Raynald A. Carre*, deputy assistant state's attorney, with whom, on the brief, were *Marc G. Ramia* and *Amy Sedensky*, supervisory assistant state's attorneys, and

*Kelly A. Masi* and *Terence D. Mariani, Jr.*, senior assistant state's attorneys, for the appellee (respondent).

*Opinion*

PRESCOTT, J. The petitioner, Joseph Walker, appeals from the judgment of the habeas court denying his petition for a writ of habeas corpus.[1] On appeal, the petitioner claims that the court improperly concluded that he failed to demonstrate that his trial counsel provided ineffective assistance by failing to move for a mistrial during his criminal trial because an exhibit, specifically, an RT-60 form,[2] was admitted into evidence and briefly published to the jury, and that exhibit evidenced that he had been incarcerated near the time of that trial. The petitioner asserts that publication of this evidence vitiated the presumption of innocence to which he was entitled, and a mistrial was the only way to remedy this violation of due process. We disagree and affirm the judgment of the habeas court denying the petition.

The facts underlying the petitioner's conviction of murder in violation of General Statutes § 53a-54a (a), conspiracy to commit murder in violation of General Statutes §§ 53a-48 and 53a-54a (a), robbery in the first degree in violation of General Statutes § 53a-134 (a) (2), and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1), were set forth by this court in its decision disposing of the petitioner's

---

[1] The habeas court granted certification to appeal.

[2] "An RT-60 is a document generated by the Department of Correction that describes, among other things, an inmate's movements within the Department of Correction, including such things as dates of entry into corrections, furloughs, releases, and the facilities where an inmate was housed." (Internal quotation marks omitted.) *State* v. *Daye*, Superior Court, judicial district of Hartford, Docket No. CR-11-0234742 (February 28, 2013) (55 Conn. L. Rptr. 705, 710); see also *Landy* v. *McLaurin*, Superior Court, judicial district of New Haven, Docket No. CV-07-4025898 (March 2, 2010) (RT-60 contains history of individual's movements within Department of Correction).

direct appeal. See *State* v. *Walker*, 169 Conn. App. 794, 796, 153 A.3d 38 (2016), remanded, 325 Conn. 920, 163 A.3d 619 (2017); see also *State* v. *Walker*, 178 Conn. App. 345, 347 and n.1, 175 A.3d 576 (2017), cert. denied, 327 Conn. 999, 176 A.3d 557 (2018). "On May 10, 2012, the [petitioner] arranged to purchase $6150 worth of cocaine from the victim, David Caban. . . . On May 12, 2012, at approximately 9 p.m., the victim was inside his home with his close friend and cousin, Angelo Caban (Angelo). . . . At approximately 9:30 p.m., the [petitioner], accompanied by his close friend, Solomon Taylor, drove . . . to the home of the victim to purchase the [crack] cocaine. The [petitioner] parked the vehicle directly in front of the house so that the passenger's side of the vehicle was facing it.

"The victim left the house and approached the vehicle. The victim momentarily leaned into the rear passenger's side of the vehicle, and then returned to the inside of his house, where he went into his bedroom. . . . As the victim [returned and] approached the vehicle, he was carrying the crack cocaine in a brown paper bag, which was tucked in his waistband.

"The victim again leaned into the rear passenger's side of the vehicle, with his feet hanging out. Shortly thereafter, a struggle began between the victim and the occupants of the vehicle. One of the occupants of the vehicle had a revolver, and the victim was attempting to hold his arm in an effort to avoid being shot; that occupant then fired a shot through the roof of the vehicle. After hearing the shot, [friends of the victim] ran toward the vehicle, but, by the time they reached it, more shots had been fired, and the victim had been hit twice, once in the arm and once in the head. As a result of his injuries, the victim was slumped over with his body only partially inside the vehicle. [One of the victim's friends] . . . tried to pull the victim out of the vehicle, but, as he did so, more shots were fired. . . .

[The victim's other friend] then went to the driver's side of the vehicle, where he encountered the [petitioner], who was pointing a revolver directly at him. The barrel of the revolver was within arm's reach of [his] face. Taylor then yelled to the [petitioner] to 'forget it,' and both men reentered the vehicle and drove away with the rear passenger's side door open and the victim only partially inside the vehicle.

"[The victim's friend and girlfriend drove after the petitioner and Taylor.] Within approximately one quarter of a mile, [they] saw the victim's body in the street. [The driver] stopped the car, and . . . called for help. . . . The victim was transported to Saint Mary's Hospital, where he died from his wounds." (Footnote omitted.) *State* v. *Walker*, supra, 169 Conn. App. 796–98. The police arrested the petitioner on September 12, 2012, in New York. Id., 800. After a jury trial, the petitioner was found guilty of all charges against him. Id. The court imposed a total effective sentence of sixty years of incarceration. Id., 801.

The petitioner filed a direct appeal with this court. We reversed the judgment of the trial court with respect to the charge of conspiracy to commit robbery in the first degree and remanded the case with direction to vacate that conviction and its accompanying sentence and affirmed the judgment in all other respects. Id., 812. The petitioner sought further review from our Supreme Court, which remanded the case to this court.[3] "The sole question presented on remand [was] whether the

---

[3] Specifically, our Supreme Court stated: "On consideration of the [petitioner's] petition for certification for appeal from the Appellate Court . . . it is ordered as follows: Granted as to the [petitioner's] claim of plain error and denied as to all other questions presented for review. It is further ordered that upon the [petitioner's] filing of the certified appeal pursuant to Practice Book § 84-9, the case is remanded to the Appellate Court with direction to consider the [petitioner's] claim of plain error in light of *State* v. *McClain*, 324 Conn. 802, 155 A.3d 209 (2017)." (Internal quotation marks omitted.) *State* v. *Walker*, 325 Conn. 920, 920, 163 A.3d 619 (2017).

trial court committed plain error in failing to instruct the jury, sua sponte, on accomplice testimony with regards to [Alexia Bates, the girlfriend of Taylor]. The [petitioner claimed] that Bates' assistance with the coverup of the crimes, by helping clean the vehicle, provided a basis for an accomplice instruction. In particular, he [argued] that Bates' participation in the coverup resulted in her being charged with tampering with evidence, and, therefore, she had the same motive to curry favor with the prosecution as an accomplice to the murder. Thus, according to the [petitioner], the court had a duty to instruct the jury to scrutinize her testimony carefully." (Internal quotation marks omitted.) *State* v. *Walker*, supra, 178 Conn. App. 350. We concluded that the petitioner had failed to demonstrate plain error and, accordingly, affirmed the judgment of conviction. Id., 356.

The petitioner subsequently commenced the underlying habeas action. On January 11, 2021, the petitioner, through counsel, filed an amended petition for a writ of habeas corpus. The petitioner alleged that he had received ineffective assistance of counsel from his criminal trial attorney, Tashun Bowden-Lewis. His amended petition set forth twenty-one allegations of deficient performance and asserted that he suffered prejudice as a result of these alleged deficiencies. The respondent, the Commissioner of Correction, filed a return that denied or left the petitioner to his proof as to nearly all of the allegations in the amended petition.

The habeas court, *M. Murphy, J.*, conducted a trial on November 16 and 17, 2021, and July 14, 2022. During the habeas trial, the court heard testimony from various witnesses, including Bowden-Lewis; Attorney Frank Riccio, the petitioner's legal expert; and the petitioner. Bowden-Lewis testified that, after discussing the matter with her client, her strategy was "to be open [with the jury] about the fact that . . . [the petitioner and the

victim met] while they were incarcerated, they were friendly, they were friends, and that [the petitioner] didn't [shoot the victim]." She further explained that she and the petitioner developed the strategy to be honest with the jury about his dealing drugs, his relationship with the victim, his criminal record, and his presence in the vehicle when the victim was shot and killed.[4]

At the conclusion of the habeas trial, the court ordered the parties to submit posttrial briefs. In his posttrial brief, the petitioner argued, inter alia, that there was no legitimate reason for Bowden-Lewis to refrain from moving for a mistrial after the jury was shown his RT-60, which indicated that he was incarcerated near the time of his criminal trial.

The habeas court issued its memorandum of decision on February 24, 2023. The court limited its consideration and discussion to the claims addressed in the petitioner's posttrial brief. With respect to the issue of Bowden-Lewis' failure to move for a mistrial following the publication of the RT-60 to the jury during the examination of a Department of Correction witness, the court concluded that the petitioner failed to establish both deficient performance and the requisite prejudice necessary to prevail on a claim of ineffective assistance of counsel. Ultimately, the court denied the amended petition for a writ of habeas corpus, and this appeal followed.

---

[4] Bowden Lewis testified that, if the jury saw the concerning portions of the petitioner's RT-60 form, she would not have been concerned. She further explained: "We wanted this—we wanted this to be an open situation, that the jury knew what his lifestyle was, knew his prior criminal record, knew [about his] convictions, the whole thing, that he may not have been, again, someone that they know, or someone that they—maybe in their family, but even with all of that, he's being honest with them about what he is, what he was doing, that he did not commit this murder and this robbery. That was the whole situation."

On appeal, the petitioner claims that the habeas court improperly concluded that he failed to demonstrate that Bowden-Lewis rendered ineffective assistance of counsel by failing to move for a mistrial after the jury observed the RT-60 document that included information that he was incarcerated near the time of his criminal trial. Specifically, the petitioner argues that Bowden-Lewis' failure to move for a mistrial constituted deficient performance because there were no legitimate strategic reasons to not seek a mistrial and that a mistrial was the only remedy sufficient to cure the alleged due process violation caused by publication of the exhibit to the jury. He further asserts that, had Bowden-Lewis moved for a mistrial, the criminal trial court likely would have granted such a motion. Accordingly, he contends that the habeas court improperly denied his petition for a writ of habeas corpus on the basis of ineffective assistance of counsel. We are not persuaded.

"The legal principles governing our review of the denial of a petition for a writ of habeas corpus alleging the ineffective assistance of counsel are well settled. A criminal defendant's right to the effective assistance of counsel . . . is guaranteed by the sixth and fourteenth amendments to the United States constitution and by article first, § 8, of the Connecticut constitution. . . . To succeed on a claim of ineffective assistance of counsel, a habeas petitioner must satisfy the two-pronged test articulated in *Strickland* v. *Washington*, [466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. *Strickland* requires that a petitioner satisfy both a performance prong and a prejudice prong. . . . To satisfy the performance prong, the petitioner must establish that his counsel made errors so serious that [counsel] was not functioning as the counsel guaranteed the [petitioner] by the [s]ixth [a]mendment. . . . The petitioner must thus show that counsel's representation

fell below an objective standard of reasonableness considering all of the circumstances. . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the [petitioner] must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy. . . . Furthermore, the right to counsel is not the right to perfect counsel. . . .

"To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . A reasonable probability is a probability sufficient to undermine confidence in the outcome. . . . In its analysis, a reviewing court may look to the performance prong or to the prejudice prong, and the petitioner's failure to prove either is fatal to a habeas petition. . . .

"On appeal, [a]lthough the underlying historical facts found by the habeas court may not be disturbed unless they [are] clearly erroneous, whether those facts constituted a violation of the petitioner's rights [to the effective assistance of counsel] under the sixth amendment is a mixed determination of law and fact that requires the application of legal principles to the historical facts of [the] case. . . . As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Citations omitted; footnote omitted; internal quotation marks omitted.) *Soyini* v. *Commissioner of Correction*, 222 Conn. App. 428, 441–42, 305 A.3d 662 (2023), cert. denied, 348 Conn. 940, 307 A.3d 274 (2024); see also *Taylor* v. *Commissioner of Correction*, 324 Conn. 631, 637–38, 153 A.3d 1264 (2017).

The following additional facts are necessary for the resolution of this appeal. During the petitioner's criminal trial, which occurred over several days in September

and October, 2014, the prosecutor called Bernard Hailey, an employee of the Department of Correction, as a witness. Hailey testified that his duties as an operations officer included documenting the movements of prisoners at a detention facility located on Whalley Avenue in New Haven. Hailey then was shown RT-60 forms for both the victim and the petitioner. He described an RT-60 as "a form that basically tells you the first time someone's been incarcerated all the way to their current incarceration." The prosecutor moved to admit both of the RT-60 forms into evidence. Bowden-Lewis remarked that she had no objection, and the court admitted the RT-60 forms relating to the petitioner and the victim into evidence as exhibits 20 and 21, respectively. The prosecutor published the victim's RT-60 form and elicited testimony from Hailey regarding the victim's time at the New Haven detention facility. Hailey testified that, on the basis of his review of Department of Correction records, the victim was held at the New Haven detention facility from February 8 to April 7, 2011.

The prosecutor then inquired about the petitioner's RT-60 form, which was published to the jury via an overhead projector. At this point, the court sua sponte excused the members of the jury from the courtroom.[5] After the jurors left, the court inquired if there was an "issue" with a specific entry on the petitioner's RT-60. The prosecutor remarked that he had disclosed this exhibit to the defense and that there had been no objection to it from Bowden-Lewis. The court replied that it

---

[5] The transcript reveals the following colloquy:

"[The Prosecutor]: Now, I'm going to show you what's been marked as state's exhibit 20. And again, bear with me a minute. And this RT-60 you indicated earlier refers or is the RT-60 of [the petitioner], and that's at the top there?

"Hailey: Yes.

"[The Prosecutor]: And again, the number here, his inmate number on the document is 3-6-2-7-4-2?

"Hailey: Yes.

"The Court: I have to ask [the jury] to step out again."

had the responsibility of ensuring that no prejudice occurred during the trial and directed the parties to redact an entry on the petitioner's RT-60 indicating that he was incarcerated in September, 2014.[6] The court emphasized: "This is my determination that the entry of [September, 2014] should not go to the jury. It's my conclusion. . . . It's not [defense] counsel's. It's mine. . . . And for the record, I don't want the jury to see that [the petitioner] may be currently incarcerated, and the reference [to September, 2014] concerns me in that regard. Nothing to do with counsel. This is my own view."[7]

After further discussion, the prosecutor suggested that additional information should be redacted from the petitioner's RT-60. The court replied that the only relevant information "is the period of time that . . . that both [the victim and the petitioner] were in [the New Haven detention facility]. . . . Everything else should be removed." The prosecutor suggested that the victim's RT-60 should also be redacted. The parties then discussed a possible factual stipulation, in lieu of certain documents that had been admitted into evidence, including the petitioner's RT-60. The court suggested that it would be preferable to admit a written stipulation into evidence and excused the jury for the remainder

---

[6] Specifically, the court stated: "I want it gone. We're going to have to mark another exhibit. That will be for identification and then the redacted copy will be the one that will go to the jury. So, I'm not going to let the jury see this until it's redacted."

[7] We note that "[t]he trial judge is the arbiter of the many circumstances which may arise during the trial in which his [or her] function is to assure a fair and just outcome." (Internal quotation marks omitted.) *Thompson* v. *Commissioner of Correction*, 184 Conn. App. 215, 225, 194 A.3d 831, cert. denied, 330 Conn. 930, 194 A.3d 778 (2018); see also *State* v. *Pouncey*, 40 Conn. App. 624, 633, 673 A.2d 547 (1996) (trial court was in best position to determine extent of prejudicial effect where prosecutor's examination of witness created implication that defendant was incarcerated), aff'd, 241 Conn. 802, 699 A.2d 901 (1997).

of the day to allow counsel time to discuss such a stipulation.

On the next day of trial, the parties reported to the court on their progress regarding the proposed stipulation. The prosecutor and Bowden-Lewis indicated that they agreed that the RT-60 forms for both the petitioner and the victim that previously had been admitted as full exhibits should be marked for identification only. The prosecutor then noted that he had redacted the RT-60 forms for the petitioner and the victim and would seek to have these new documents admitted into evidence when Hailey's testimony resumed. The court ordered the clerk to mark exhibits 20 and 21, the original RT-60 forms for the petitioner and the victim, for identification only.

Hailey then resumed his testimony, during which the court admitted into evidence the redacted RT-60 forms for the victim and the petitioner as state's exhibits 25 and 26, respectively. The parties' written stipulation also was admitted into evidence as state's exhibit 27. Hailey then testified that the petitioner and the victim entered the New Haven detention facility on February 8, 2011, were housed in the same units for the next few weeks, and would have had the opportunity to interact with each other.

Next, we identify the constitutional principles, namely, the presumption of innocence, underlying the petitioner's claim in this appeal. "The right to a fair trial is a fundamental liberty secured by the [f]ourteenth [a]mendment. . . . The presumption of innocence, although not articulated in the [c]onstitution, is a basic component of a fair trial under our system of criminal justice. . . . In order to implement that presumption, courts must be alert to factors that may undermine the fairness of the fact-finding process. In the administration of criminal justice, courts must carefully guard

against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt. . . . Put another way, for the presumption to be effective, courts must guard against practices which unnecessarily mark the defendant as a dangerous character or suggest that his guilt is a foregone conclusion. . . . In order for a criminal defendant to enjoy the maximum benefit of the presumption of innocence, our courts should make every reasonable effort to present the defendant before the jury in a manner that does not suggest, expressly or impliedly, that he or she is a dangerous character whose guilt is a foregone conclusion." (Citation omitted; internal quotation marks omitted.) *State* v. *Marcus H.*, 190 Conn. App. 332, 346, 210 A.3d 607, cert. denied, 332 Conn. 910, 211 A.3d 71, cert. denied, U.S. , 140 S. Ct. 540, 205 L. Ed. 2d 343 (2019); see *State* v. *Prutting*, 40 Conn. App. 151, 165–66, 669 A.2d 1228, cert. denied, 236 Conn. 922, 674 A.2d 1328 (1996); see also *State* v. *Woolcock*, 201 Conn. 605, 612–13, 518 A.2d 1377 (1986).

Factors that may negatively impact the presumption of innocence include compelling a defendant to wear identifiable prison clothing at his or her jury trial,[8] requiring a defendant to wear restraints in view of the

---

[8] In *Estelle* v. *Williams*, 425 U.S. 501, 504, 96 S. Ct. 1691, 48 L. Ed. 2d 126 (1976), the United States Supreme Court noted that, in most circumstances, an accused should not be compelled to appear at trial in prison or jail clothing due to the potential impairment of the presumption of innocence, a right basic to the adversary system. It held, however, that, "although the [s]tate cannot, consistently with the [f]ourteenth [a]mendment, compel an accused to stand trial before a jury while dressed in identifiable prison clothes, the failure to make an objection to the court as to being tried in such clothes, for whatever reason, is sufficient to negate the presence of compulsion necessary to establish a constitutional violation." Id., 512–13; see also *State* v. *Williamson*, 206 Conn. 685, 705, 539 A.2d 561 (1988) (defendant failed to object at trial and record was unclear as to whether he, in fact, wore identifiable prison clothing, which precluded our Supreme Court from reviewing defendant's claim or affording him relief on "barren record").

jury,[9] and referring to a defendant's incarceration during or near the time of trial. Nevertheless, this court has recognized that "[n]ot every reference to a defendant's pretrial incarceration is grounds for a mistrial. . . .

---

[9] In *State* v. *Brawley*, 321 Conn. 583, 585, 137 A.3d 757 (2016), on the first day of trial, defense counsel moved to have the defendant's shackles removed. The trial court denied the motion and referred to "the standard procedure . . . to leave the shackles on during trial . . . [except for] jury selection when a juror is in the back row . . . ." (Internal quotation marks omitted.) Id. The defendant appealed his conviction, and this court affirmed the judgment of conviction. Id. He sought further review from our Supreme Court, where he claimed that the trial court had determined improperly that he would be required to remain shackled throughout the guilt phase of the trial. Id. In response to an articulation order from our Supreme Court, the trial court indicated that the defendant wore only leg shackles and that efforts were made to ensure that the jury did not see the defendant's shackles. Id., 586.

Our Supreme Court began its analysis by stating: "It is well established that, [a]s a general proposition, a criminal defendant has the right to appear in court free from physical restraints. . . . Nonetheless, a defendant's right to appear before the jury unfettered is not absolute. . . . A trial court may employ a reasonable means of restraint [on] a defendant if, exercising its broad discretion in such matters, the court finds that restraints are reasonably necessary under the circumstances. . . . Despite the breadth of that discretion, however, [t]he law has long forbidden routine use of visible shackles during the guilt phase; it permits a [s]tate to shackle a criminal defendant only in the presence of a special need." (Citation omitted; internal quotation marks omitted.) Id., 587. This rule serves to preserve a defendant's presumption of innocence by avoiding a suggestion, express or implied, that he or she is a dangerous individual whose guilt is a foregone conclusion. Id., 588. Nevertheless, the defendant "bears the burden of showing that he has suffered prejudice by establishing a factual record demonstrating that the members of the jury knew of the restraints." (Internal quotation marks omitted.) Id.; see also *State* v. *Flowers*, 69 Conn. App. 57, 63, 797 A.2d 1122 (negative connotations of restraints are without significance unless their use comes to attention of jury), cert. denied, 260 Conn. 929, 798 A.2d 972 (2002).

In a situation where no justification for the use of shackles exists in the record, and the jury is aware of such restraints, the state must satisfy the constitutional harmless error standard to prevail on appeal. "When, however, a court, without adequate justification, orders [a] defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation. The [s]tate must prove beyond a reasonable doubt that the [shackling] error complained of did not contribute to the verdict obtained." (Emphasis omitted; internal quotation marks omitted.) *State* v. *Brawley*, supra, 321 Conn. 588–89; see also *State* v. *McCarthy*, 210 Conn. App. 1, 41–42, 268 A.3d 91, cert. denied, 342 Conn. 910, 271 A.3d 136 (2022).

There is nothing sacrosanct about a defendant's pretrial incarceration." (Internal quotation marks omitted.) *State* v. *McCleese*, 94 Conn. App. 510, 515, 892 A.2d 343, cert. denied, 278 Conn. 908, 899 A.2d 36 (2006); see also *State* v. *Reddick*, 197 Conn. 115, 129, 496 A.2d 466 (1985), cert. denied, 474 U.S. 1067, 106 S. Ct. 822, 88 L. Ed. 2d 795 (1986); *State* v. *Cote*, 136 Conn. App. 427, 451–52, 46 A.3d 256 (2012), aff'd, 314 Conn. 570, 107 A.3d 367 (2014).

We focus our analysis on the prejudice prong of the *Strickland* standard. At oral argument before this court, the petitioner's counsel indicated that he was pursuing a claim of structural error.[10] "An error is structural only

[10] The petitioner did not argue structural error before the habeas court. Nor did he contend that, under the facts and circumstances of the present case, it was unnecessary for him to establish prejudice with respect to his claim of ineffective assistance of counsel resulting from the failure of Bowden-Lewis to move for a mistrial following the display of his RT-60 on the overhead projector. "It is well established that this court is not bound to consider any claimed error unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim. . . . It is equally well settled that a party cannot submit a case to the trial court on one theory and then seek a reversal in the reviewing court on another." (Internal quotation marks omitted.) *Robles* v. *Commissioner of Correction*, 169 Conn. App. 751, 763, 153 A.3d 29 (2016), cert. denied, 325 Conn. 901, 157 A.3d 1146 (2017).

Further, the petitioner did not expressly argue structural error in his brief to this court. It was raised for the first time at oral argument, which is not proper under our rules and precedent. "It is well settled that claims on appeal must be adequately briefed, and cannot be raised for the first time at oral argument before the reviewing court." (Internal quotation marks omitted.) *Studer* v. *Studer*, 320 Conn. 483, 493 n.11, 131 A.3d 240 (2016); see also *LaSalle* v. *Commissioner of Correction*, 227 Conn. App. 520, 527 n.5, 321 A.3d 499, cert. denied, 350 Conn. 919, 325 A.3d 217 (2024).

Typically, we would decline to review the petitioner's claim because it was not raised in the habeas court. We have, however, elected to exercise our discretion and consider the merits of the petitioner's structural error claim. See, e.g., *L. K.* v. *K. K.*, 226 Conn. App. 279, 287–88, 318 A.3d 243 (2024); *State* v. *Lanier*, 205 Conn. App. 586, 628 n.9, 258 A.3d 770 (2021), aff'd, 347 Conn. 179, 296 A.3d 770 (2023). We emphasize that, had the petitioner prevailed on such a claim, he would have demonstrated that the constitutional violation undermined the integrity of the proceedings to such an extent that automatic reversal was necessary. See *State* v. *Cushard*, 328

[if] the error renders a trial fundamentally unfair and is not susceptible to a harmless error analysis . . . .'' (Internal quotation marks omitted.) *State* v. *Morales*, 121 Conn. App. 767, 772, 996 A.2d 1206, cert. denied, 298 Conn. 909, 4 A.3d 835 (2010). In cases of structural error, actual prejudice is presumed, and reversal is required even if no particular prejudice is shown and even if overwhelming evidence of guilt exists. See *Dennis* v. *Commissioner of Correction*, 134 Conn. App. 520, 536–37, 39 A.3d 799 (2012); but see *Weaver* v. *Massachusetts*, 582 U.S. 286, 300–302, 137 S. Ct. 1899, 198 L. Ed. 2d 420 (2017) (certain types of structural error, such as improper closing of courthouse during jury voir dire, may require showing of prejudice or fundamental unfairness if raised for first time in habeas proceeding).[11]

The petitioner has failed to provide us with any authority to support his contention that structural error applies to this claim of ineffective assistance of counsel.

Conn. 558, 570, 181 A.3d 74 (2018). Additionally, the respondent did not assert that we should decline to address the merits of the petitioner's claim of structural error at oral argument. For these reasons, and under the specific facts and circumstances of the present case, we have addressed the merits of the petitioner's structural error claim despite his noncompliance with our rules.

[11] Additionally, we note that the United State Supreme Court has recognized that, in certain limited circumstances, prejudice is presumed in the context of an ineffective assistance of counsel claim. "*Strickland* recognized, however, that [i]n certain [s]ixth [a]mendment contexts, prejudice is presumed. . . . In . . . [*United States* v. *Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)] . . . which was decided on the same day as *Strickland*, the United States Supreme Court elaborated on the following three scenarios in which prejudice may be presumed: (1) when counsel is denied to a [petitioner] at a critical stage of the proceeding; (2) when counsel entirely fails to subject the prosecution's case to meaningful adversarial testing; and (3) when counsel is called upon to render assistance in a situation in which no competent attorney could do so. . . . This is an irrebuttable presumption." (Citation omitted; internal quotation marks omitted.) *Edwards* v. *Commissioner of Correction*, 183 Conn. App. 838, 843–44, 194 A.3d 329 (2018). The petitioner in the present case has not raised a claim under *Cronic*.

Cf. *State* v. *Brawley*, 321 Conn. 583, 588–89, 137 A.3d 757 (2016) (state must prove beyond reasonable doubt that shackling error did not contribute to verdict when court ordered defendant to wear shackles that were in view of jury); *State* v. *Tweedy*, 219 Conn. 489, 508, 594 A.2d 906 (1991) (in absence of evidence that jury was aware defendant was shackled, it was clear beyond reasonable doubt that presumption of innocence was not abridged by court's decision to have defendant shackled during trial); see generally *State* v. *Lopez*, 271 Conn. 724, 733–34, 859 A.2d 898 (2004) (structural error applies to very limited class of cases where errors, such as defective instruction on reasonable doubt, racial discrimination in selection of grand jury, denial of public trial, and denial of self-representation at trial, transcend criminal process and deprive defendant of basic protections without which trial cannot reliably serve its function to determine guilt or innocence and no criminal punishment may be regarded as fundamentally fair).

We recognize that our Supreme Court, in *State* v. *Rose*, 305 Conn. 594, 605–606, 46 A.3d 146 (2012), determined under its inherent supervisory authority over the administration of justice that the conviction of a defendant who is compelled to stand trial in identifiable prison clothing is reversible per se.[12] The petitioner has

---

[12] In *State* v. *Rose*, supra, 305 Conn. 596, the defendant, a pretrial detainee, was charged with, and convicted of, assaulting public safety personnel. In his appeal to this court, the defendant claimed, inter alia, that the trial court improperly had compelled him to wear prison clothes, namely, a yellow jumpsuit, during his jury trial in violation of his federal constitutional rights and Practice Book § 44-7. Id., 597–98. At the outset of his trial, the defendant objected to wearing prison attire as opposed to "civilian clothing  . . . ." Id., 599. The trial court specifically instructed the venire panels during jury selection not to consider the defendant's attire. Id. The court's instructions to the jury prior to its deliberations did not, however, contain a curative measure regarding his clothing. Id., 599–600.

This court agreed with the defendant's constitutional claim and concluded that "it is evident that the defendant did not receive a fair trial." (Internal quotation marks omitted.) Id., 598. First, we concluded that it was not appropriate to apply a harmless error analysis where the defendant in that case had raised an objection to being forced to wear identifiable prison

not presented us with any argument or explanation as

clothing and the trial court had failed to make any findings regarding "an essential state policy militating in favor of compelling the defendant to stand trial in prison clothing." (Internal quotation marks omitted.) Id., 601. Second, this court determined that, even if harmless error analysis was appropriate, the state had failed to satisfy that standard under the facts and circumstances of that case. Id., 601–602. Accordingly, we reversed the judgment of conviction. Id., 600.

On appeal to our Supreme Court, the state claimed that we improperly had concluded that the harmless error doctrine did not apply to the defendant's claim and that his appearance in identifiable prison clothing was not harmless beyond a reasonable doubt. Id., 603–604. The defendant countered that compelling him to wear such clothing constituted structural constitutional error. Id., 604. Following oral argument, the parties were directed to submit supplemental briefs on the issue of whether the judgment of this court should be affirmed on the alternative ground that the defendant's conviction should be reversed on the basis of our Supreme Court's supervisory authority over the administration of justice. Id., 604–605. Our Supreme Court concluded that "reversing the defendant's conviction is warranted in the exercise of our inherent supervisory authority over the administration of justice. Pursuant to that authority, we adopt a rule that the conviction of a defendant who is compelled to stand trial in identifiable prison clothing in violation of his or her constitutional rights is reversible per se. Because we decide this case on the basis of our supervisory authority, we need not resolve the issue of whether a trial court's constitutionally erroneous decision to compel a defendant to stand trial before a jury in identifiable prison clothing is susceptible to harmless error analysis, as the state claims, or instead amounts to structural error, as the defendant contends and as the Appellate Court apparently concluded." (Footnote omitted.) Id., 605–606.

In support of its conclusion, our Supreme Court explained that compelling a defendant to wear identifiable prison clothing undermined the integrity of the trial and diminished the perceived fairness of the judicial system as a whole. Id., 608. Specifically, it compromised the ability of the jury to engage in neutral fact-finding and eroded the presumption of innocence. Id. Further, in contrast to situations involving the need for physical restraints, "compelling an accused to wear jail clothing furthers no essential state policy." (Internal quotation marks omitted.) Id., 609. Finally, the court reasoned that "compelling a defendant to stand trial in identifiable prison clothing is unfair not merely because it inject[s] . . . improper evidence of the defendant's imprison[ment] status into the presentation of the case . . . but also, more fundamentally, because the defendant's appearance in prison clothes invites and indeed tempts jurors to draw highly unfavorable inferences about his character and likely conduct. . . . Because prison clothing is a constant and vivid indication that its wearer is a detainee and perhaps a flight risk and a threat, a defendant's appearance in identifiable prison clothing does something substantially worse than inject improper

to why the rule set forth in *Rose* should be extended to his appeal, nor has he provided any binding or persuasive precedent requiring the application of structural error under these facts and circumstances.

Thus, we consider whether the habeas court properly determined that the petitioner failed to demonstrate, under *Strickland*'s second prong, that he was prejudiced by counsel's failure to move for a mistrial. In the present case, the petitioner was required to show that it was reasonably probable that the criminal court would have granted a motion for a mistrial. See *Sinchak* v. *Commissioner of Correction*, 126 Conn. App. 670, 679, 14 A.3d 348 (to show prejudice, petitioner was required to prove that, if motion for mistrial had been filed, it was reasonably probable that such motion would have been granted), cert. denied, 301 Conn. 901, 17 A.3d 1045 (2011); see also *Streater* v. *Commissioner of Correction*, 143 Conn. App. 88, 108, 68 A.3d 155 (prejudice established by showing that court would have granted motion for mistrial), cert. denied, 310 Conn. 903, 75 A.3d 34 (2013).

"[Although] the remedy of a mistrial is permitted under the rules of practice, it is not favored. [A] mistrial should be granted only as a result of some occurrence upon the trial of such a character that it is apparent to

evidence into the case, namely, it causes jurors to deliberate under a cognitive bias. Because this bias is subtle and ever present, jury instructions may not be adequate to cure it." (Emphasis omitted; footnote omitted; internal quotation marks omitted.) Id., 610–11.

Our Supreme Court then explained why the per se rule of reversibility under these circumstances was necessary. Id., 611. First, it alerted the trial court that compelling a criminal defendant to wear identifiable prison clothing simply cannot be sanctioned. Id. Second, it sent a strong message to the public that our Supreme Court accorded the highest importance to the presumption of innocence and basic fairness. Id., 611–12. In conclusion, it noted that this specific type of error is "clear-cut and unambiguous," "avoidance is virtually costless," and is "not an error of the sort that can be excused as occurring in the heat of battle." Id., 614.

the court that because of it a party cannot have a fair trial . . . and the whole proceedings are vitiated. . . . If curative action can obviate the prejudice, the drastic remedy of a mistrial should be avoided." (Internal quotation marks omitted.) *Sinchak* v. *Commissioner of Correction*, supra, 126 Conn. App. 679; see also *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 68–69, 967 A.2d 41 (2009) (same); see generally *State* v. *Hawthorne*, 176 Conn. 367, 372, 407 A.2d 1001 (1978) (mistrial should be granted if, as result of some occurrence at trial it is apparent to court that party cannot have fair trial and entire proceedings should be vitiated); *State* v. *Barber*, 173 Conn. 153, 157, 376 A.2d 1108 (1977) (same).

In the present case, the petitioner asserts that the admission into evidence and publication of his RT-60 form to the jury caused a significant issue that irreparably prejudiced him because it destroyed the presumption of innocence to which he was entitled. The record, however, does not establish to what degree, if any, the jury was affected by the publication of the RT-60. The record is unclear as to the specific details regarding the manner and duration in which the petitioner's RT-60 form was displayed on the overhead projector.[13] It is unknown whether one or more members of the jury even noticed the entry showing the petitioner's incarcerated status near the time of his criminal trial. Furthermore, the record does not reflect whether any jurors, even if they saw the entry regarding the petitioner's incarceration near the time of his criminal trial, comprehended its significance.

In *Thompson* v. *Commissioner of Correction*, 184 Conn. App. 215, 226, 194 A.3d 831, cert. denied, 330 Conn. 930, 194 A.3d 778 (2018), we declined to assume that the jury heard the complainant's testimony that

---

[13] See footnote 5 of this opinion and accompanying text.

she was not the first person that the petitioner in that case had assaulted merely because her statement was recorded and subsequently included in the transcript, given the trial judge's statement that he was " 'very confident' " that the jury had not heard the testimony. "The petitioner cannot rely on mere conjecture or speculation to satisfy either the performance or prejudice prong but must instead offer demonstrable evidence in support of his claim. . . . If the facts revealed by the record are insufficient, unclear or ambiguous as to whether a constitutional violation has occurred, we will not attempt to supplement or reconstruct the record, or to make factual determinations, in order to decide the defendant's claim." (Citation omitted; internal quotation marks omitted.) Id., 224; see also *State* v. *Williamson*, 206 Conn. 685, 704–706, 539 A.2d 561 (1988) (Supreme Court declined to review claim when record was unclear as to whether defendant wore prison clothes). Similarly, given the factual lacuna in the present case, we cannot conclude that the petitioner has established prejudice necessary to prevail on his claim.

Although it is unclear as to precisely how long the RT-60 was displayed to the jury, nothing in the record supports a conclusion that this document remained in the view of the jury for an extended or substantial period of time. Further, this was the sole instance during the trial where the jury was shown the petitioner's unredacted RT-60 form.

We considered an analogous situation in *State* v. *Marcus H.*, supra, 190 Conn. App. 332. In that case, the state moved to increase the defendant's bond during the course of his criminal trial. Id., 344. The court granted this request, and the defendant was taken into custody, during which time he was shackled during a recess in the court proceedings. Id. After the recess, the trial resumed, and his leg shackles were not visible

to the jury. Id. At some point, the self-represented defendant, stood up and started to approach a witness with the permission of the court. The defendant's shackles on his ankles briefly were visible to the jury. Id. The prosecutor immediately requested that the jury be excused. Id. After the trial court ordered the shackles to be removed, the defendant moved for a mistrial, which was denied. Id., 344–45. The court subsequently instructed the jury to not consider during its deliberations that the defendant had been shackled. Id., 345.

On direct appeal from his conviction, the defendant raised a constitutional claim alleging that the exposure of his shackles to the jury vitiated his presumption of innocence. Id., 345–46. In rejecting the defendant's claim, this court duly recognized that the presence of shackles, similar to compelling a defendant to appear in court wearing prison attire, implicated due process concerns, as both have an erosive effect on the presumption of innocence. Id., 348. We noted, however, that "[t]his does not mean . . . that every practice tending to single out the accused from everyone else in the courtroom must be struck down." (Internal quotation marks omitted.) Id., 345. Furthermore, we reasoned that "*the defendant has not provided any case law that stands for the proposition that a defendant's right to due process is violated if the jury is briefly exposed to facts that would lead it to believe that the defendant is in custody*." (Emphasis added.) Id., 350. We explained that the shackles were visible for only a brief period of time. Id. We then cited to federal precedent to support our conclusion that a brief exposure to the jury of the defendant's shackles, along with a curative instruction, did not deprive the defendant of a fair trial.[14]

---

[14] "For example, in *Ghent* v. *Woodford*, 279 F.3d 1121, 1132 (9th Cir. 2002), a defendant claimed that his constitutional right to due process was violated because he was physically restrained by the state in the presence of the jury. Specifically, jurors saw the defendant in the hallway at the entrance to the courtroom in handcuffs and other restraints. Id., 1133. The reviewing court stated that [t]he jury's brief or inadvertent glimpse of a shackled

Id., 351. Likewise, the record in the present case does not indicate that the members of the jury viewed the RT-60 document for an extended period of time, and, even if one or more members of the jury briefly noticed that the RT-60 contained information regarding the petitioner's incarceration near the time of his criminal trial, such a minimal exposure to this fact would not constitute a violation of due process.

We also note that the court instructed the jury that it could consider only the evidence admitted into evidence during the trial. Specifically, the court stated that, in reaching its verdict, the jury was limited to the testimony and the full exhibits that had been admitted into evidence. The jury is presumed to follow the court's instructions. See, e.g., *State* v. *Outlaw*, 350 Conn. 251, 284, 324 A.3d 107 (2024) (in absence of evidence to contrary, jury is presumed to follow court's instructions); *State* v. *Hughes*, 341 Conn. 387, 429, 267 A.3d 81 (2021) (same).

Further, the petitioner baldly asserts that the trial court would have granted a motion for a mistrial at his criminal trial had Bowden-Lewis made such a motion. He has not, however, provided any support for that assertion. We emphasize that a "mistrial is considered an extreme remedy and is disfavored where the harm

---

defendant is not inherently or presumptively prejudicial, nor has [the defendant] made a sufficient showing of actual prejudice. Id.

"Additionally, in *United States* v. *Jones*, 468 F.3d 704, 706 (10th Cir. 2006), a defendant claimed that his right to due process was violated because a juror briefly saw him in leg shackles during the afternoon break on the second day of trial. The court held that there was no due process violation and stated that, [i]n itself, a juror's brief view of a defendant in shackles does not qualify as a due process violation worthy of a new trial. Id., 709. *We agree* with the courts in *Ghent* and *Jones*, *that a jury's brief or inadvertent glimpse of a shackled defendant is not inherently or presumptively unconstitutional.* Unlike cases in which the defendant was ordered to remain shackled throughout the entirety of the trial, here, the exposure lasted for only a brief period of time." (Emphasis added; internal quotation marks omitted.) *State* v. *Marcus H.*, supra, 190 Conn. App. 351.

can be mitigated through other means." *Robinson* v. *Commissioner of Correction*, 167 Conn. App. 809, 823, 144 A.3d 493, cert. denied, 323 Conn. 925, 149 A.3d 982 (2016). Although it is true that the trial judge sua sponte acted quickly upon recognizing a potential issue with the unredacted RT-60 form, such alacrity demonstrated his commendable efforts to ensure that the petitioner's right to due process right was not violated and obviated the need to declare a mistrial. In other words, it does not follow, a fortiori, from the court's prompt actions after the exhibit was published to the jury that a motion for a mistrial would have been granted. Finally, given the strategy employed by Bowden-Lewis during the petitioner's criminal trial to be honest and up-front with the jury about his association with the victim, including their prior incarcerations, and participation in the sale of illegal drugs, the jury was aware that the petitioner had been incarcerated at least once prior to the trial, and thus it would be of reduced significance if it learned of an additional period of incarceration near the time of his criminal trial. For these reasons, we conclude that the petitioner has failed to demonstrate prejudice as a result of Bowden-Lewis' failure to move for a mistrial. Accordingly, his claim of ineffective assistance of counsel must fail.

The judgment is affirmed.

In this opinion the other judges concurred.